Marvin G. HAASE, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 85–3194.

United States Court of Appeals, Seventh Circuit.

Argued June 17, 1986.

Decided Aug. 27, 1986.

As Amended Aug. 29, 1986.

John H. Bisbee, Macomb, Ill., for petitioner-appellant.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for respondent-appellee.

Before WOOD, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

On July 3, 1985, appellant Marvin G. Haase pleaded guilty to two counts of knowingly making false statements for the purpose of influencing a federally insured financial institution in violation of 18 U.S.C. § 1014. Two weeks later, Haase, using the services of a different attorney, filed a motion under 28 U.S.C. § 2255 seeking to vacate his plea on the grounds of incompetency of counsel and inadequacy of the plea. The district judge denied relief, finding that his taking of the plea, while not in complete accord with Federal Rule of Criminal Procedure 11, was adequate and that, while Haase's representation fell below the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), petitioner had failed to establish the necessary prejudice required by *Hill v. Lockhart*, —— U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). We affirm these con-

clusions, but reverse and remand for further consideration of Haase's motion for reconsideration of sentence.

## I.

In the mid 1970s, Marvin Haase was a successful businessman involved in a variety of commercial enterprises in central Illinois. He had a good banking relationship with the Monmouth Trust and Savings Bank of Monmouth, Illinois, that included a $495,000 line of credit. Sometime during 1975, officials of the Monmouth Production Credit Association (PCA), an agricultural cooperative funded in part by the United States Farm Credit Administration, persuaded Haase to change lending institutions. Unfortunately, in the late 1970s, Haase suffered some serious setbacks. Officials from the PCA told Haase in 1978 that they would "see him through" his financial difficulties. Apparently more anxious to lend money than the law allowed, the PCA officials lent Haase money in 1978 to invest in the American Buyer's Club, an investment group that did not invest in agriculture. Sometime after 1978, it became clear to the PCA officials that they had not been legally authorized to make the nonagricultural loans. The PCA officials were able to get Haase to sign documents purporting to authorize the PCA officials to invent agricultural collateral for his nonagricultural line of credit. Sometime after 1979, the PCA officials lent money to Haase based on signed financial statements that indicated that Haase had certain agricultural collateral that he did not in fact have. There is some dispute about the extent to which the PCA officials induced Haase to sign the documents, but it is clear that they did have a substantial role in the falsification of the documents. It is these documents that formed the basis of the indictment against Haase.

In 1984, Haase met Hubert W. Woodruff, an attorney who represented some individuals who wanted to invest in one of Haase's business ventures. Haase and Woodruff became friends. Woodruff began advising Haase in his dealings with the PCA. At that point, the PCA had already secured a state court judgment against Haase. As Haase's financial difficulties became insurmountable (including his substantial debt to PCA), Woodruff advised Haase to file a Chapter 7 bankruptcy petition. The PCA argued to the bankruptcy court that Haase's debt to the PCA should not be discharged because they alleged that the obligation had been procured by fraud. On March 22, 1985, Woodruff advised Haase that he had no defense to the PCA's argument. Following Woodruff's advice, Haase entered into a stipulation that his debt of $750,000 to the PCA was nondischargeable.

Three days later, Assistant United States Attorney Mark Stuaan, apparently aware that Woodruff had been representing Haase in the bankruptcy proceedings, contacted Woodruff to notify him that Haase was a target of a grand jury probe regarding the PCA. In April 1985, Woodruff, who was working without compensation, reached an agreement whereby Haase would waive indictment and plead guilty to one count of violating 18 U.S.C. § 1014 and would receive a probationary sentence of five years in addition to a fine and an order of restitution. At no point during the course of this case did Woodruff provide Haase with an explanation of the elements of 18 U.S.C. § 1014 or a discussion of any alternative courses of action such as going to trial. Woodruff believed that Haase had no defenses and that if he went to trial, conviction was a virtual certainty.

On May 3, 1985, Haase appeared before Judge Mihm to plead guilty to a one count information. Judge Mihm referred the case to the probation department, reserving judgment on whether he would approve the proposed plea agreement. See Fed.R. Crim.P. 11(e)(1)(C) & 11(e)(2). Apparently believing that Judge Mihm would accept the agreement and that any statement by Haase might jeopardize the agreement, Woodruff advised his client not to give his version of the offense to the probation department. On June 21, 1985, Judge Mihm told the parties that he could not approve

the plea agreement because it would deprecate the seriousness of the offense. *See* Fed.R.Crim.P. 11(e)(4). Judge Mihm told Haase to explore other alternatives with his attorney. The matter was reset for July 3, 1985.

Because Woodruff believed that Haase would be convicted if he went to trial, Woodruff continued to advise Haase to plead guilty. In a letter dated June 27, 1985, he advised Haase that he had communicated with Assistant United States Attorney Stuaan and that Stuaan would be willing to go along with a plea that exposed Haase to a possibility of four years in prison.

At the proceedings that afternoon the district judge described the counts against Haase, inquired as to the petitioner's mental state, and instructed the government to read its factual basis into the record. All of this was done in a fairly detailed fashion. The questioning of Haase, however, was significantly less in-depth. Following the explanation of each aspect of the plea proceeding, the court asked Haase a series of questions which required simple affirmative or negative responses concerning what Haase understood but never resulted in any dialogue between the judge and the defendant. Notably absent from this relatively exhaustive list of questions was any inquiry into whether Haase admitted to *knowingly* overstating his agricultural holdings as required by § 1014. At the conclusion of the plea hearing Haase was sentenced to one year in prison.

Two weeks later, with the aid of new counsel, Haase sought relief under 28 U.S.C. § 2255 in an effort to vacate the plea or, at a minimum, to have his sentence reduced. Following a hearing before a magistrate, the district court reviewed the testimony from the hearing and the events surrounding the taking of the plea and concluded that: (1) his taking of the plea, while "not done in perfect fashion and probably not in the fashion that I would do it again if I had the opportunity," was adequate; (2) Haase had received constitutionally deficient representation but that

*Strickland v. Washington* had not been violated because Haase had failed to establish the necessary prejudice; and (3) petitioner's motion for reconsideration of his sentence should be denied under § 2255 and should properly be placed before the district court in a motion under Rule 35 after the disposition of this appeal. Haase appeals all three aspects of the decision.

## II.

As an initial matter it must be stressed that this case arises as a collateral attack to a criminal proceeding under 28 U.S.C. § 2255 rather than a direct appeal. Therefore, the petitioner must establish more than a failure to adhere to the rules governing the taking of pleas. Relief will only be granted where the error is jurisdictional, constitutional, or is a "fundamental defect which inherently results in a complete miscarriage of justice." *See United States v. Frye*, 738 F.2d 196, 201 n. 6 (7th Cir.1984) (citing *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974)). *See also United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). While the circumstances surrounding Haase's plea of guilty are unfortunate and should have been avoided, none of Haase's objections going to the validity of the plea warrant relief under § 2255.

### *The Guilty Plea*

Haase contends that his plea should be vacated because it was inadequate under Rule 11. In support of his position petitioner stresses the failure of the district court to engage him in a meaningful dialogue and, more importantly, the failure of the district court to establish on the record that the defendant was aware of and admitted to the specific intent element of the crime for which he was charged. Were this a direct appeal there would be potentially fatal flaws in the taking of this plea. As we emphasized in *Frye* and again in *United States v. Fountain*, 777 F.2d 351 (7th Cir.1985) Rule 11 provides protection for those who voluntarily choose to waive

their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks. To that end it is vital that the district court engage the defendant in a meaningful colloquy that elucidates and preserves in the record the defendant's state of mind, the defendant's knowledge of the rights foregone, the factual basis of the plea, and the defendant's understanding and acknowledgment of the offense to which he is pleading. *See United States v. Fountain,* 777 F.2d at 356.

■ This case, however, like *United States v. Frye* is not a direct appeal, and not every violation of Rule 11 is of a magnitude justifying relief under § 2255. This is because the core constitutional protection at issue here is the requirement that a guilty plea must be truly voluntary. *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). Rule 11 is a device for protecting the right but the scope of Rule does not equal the more limited scope of the constitutional right. Thus, a guilty plea is constitutionally infirm, as opposed to only violative of Rule 11, when the plea is not knowing and intelligent. *See Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Frye,* 738 F.2d at 199–200.

In analyzing the "voluntariness" of guilty pleas courts have looked beyond the transcript of the plea hearing to all the surrounding facts and circumstances. *See, e.g., Henderson,* 426 U.S. at 644–47, 96 S.Ct. at 2257–58; *Frye,* 738 F.2d at 199–201. The gravaman of Haase's argument here is that because of the incompetence of his counsel and the inadequacies of the plea hearing he was unaware of the specific intent requirement of 18 U.S.C. § 1014 and the possible defense this requirement presented. Certainly the failure of the district court and defendant's counsel to adequately apprise the defendant of a key element of a crime draws into question whether a defendant's plea was made knowingly and intelligently as required by the constitution. *See Henderson,* 426 U.S.

at 645, 96 S.Ct. at 2257. *See generally* Project, *Fifteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1984–85,* 74 Geo.L.J. 499, 696–711 (1986).

■ While we do not condone the legal representation received by Haase, see discussion *infra,* or approve of the scope of the plea hearing, we cannot conclude, based on this record, that the petitioner did not knowingly and intelligently waive his rights and plea guilty. This conclusion is based on two factors. First, Haase, unlike the petitioners in *Henderson* and *Frye,* is a successful businessman with a high school education. Given his background it is highly likely that he had some understanding of what the judge was saying to him during the plea hearing. Within the previous year Haase had been through Chapter VII proceedings in which the issue of fraud had arisen and he had been deposed with regard to his debt to the PCA. This resulted in a stipulation that his $750,000 debt to the PCA was non-dischargeable. In light of the pecuniary damage he had already suffered and his previous experience with the courts it is difficult to construe the record, in the absence of any contrary evidence, as supporting any claim that Haase was unaware of the import of what he was doing or was otherwise awed by his presence in court.

Second, the ability to comprehend is meaningless if through the failure of court and counsel you do not receive the information necessary to understanding. A close examination of the plea hearing reveals that despite its numerous shortfalls, the hearing provided Haase with sufficient information for him to fully understand the elements of the crime. The district judge carefully informed Haase of the charges against him, clearly mentioning that he was charged with intentional acts, and after reciting each charge Haase was asked if he understood. A similar type of exchange took place following the prosecution's presentation of its factual basis, where once again the intentional aspect of the crime was described. Throughout the

plea the district judge questioned Haase about his understanding of the proceedings and the rights he was foregoing, and often turned to counsel to inquire into whether these matters had been discussed with his client. The district court obviously made a sincere attempt to impress upon Haase the seriousness of his decision to plea, the nature of the crime, and the evidence amassed against him. The failure of the district court to obtain an admission of guilt as to intent and to engage Haase in a more participatory dialogue, like the advice provided by Haase's counsel, are serious deviations from the thorough and reflective treatment any guilty plea should receive. However, given the nature of the defendant and the generally complete presentation by the district court we cannot find that Haase was unaware that he was charged with *knowingly* misrepresenting his agricultural holdings. Under the circumstances of this case we are unpersuaded that a constitutional violation justifying section 2255 relief under *Henderson* or *Frye* occurred in this case.

### Inadequate Representation of Counsel

There is no reason to dispute the district court's conclusion that Haase did not receive the minimum level of representation a criminal defendant is entitled to under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The issue here is the second prong of the *Strickland* standard for reversible constitutional error: counsel's unprofessional conduct must have been the cause of the result of the proceedings. In the recent case of *Hill v. Lockhart,* —— U.S. ——, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), the Court extended the doctrine of *Strickland* to the guilty plea setting. *See also Evans v. Meyer,* 742 F.2d 371, 375 (7th Cir.1984) (cited with approval in *Hill,* 106 S.Ct. at 371).

█ Haase claims that his counsel deprived him of the opportunity to present a defense based on the theory that the misrepresentations were all done at the insistence of the PCA personnel and that

Haase, therefore, lacked the necessary specific intent for a violation of section 1014. Collateral review is complicated in these situations by the lack of factual development that would occur had there been a trial. Nevertheless it is this somewhat speculative type of analysis that we, like the district court, must undertake. *Evans,* 742 F.2d at 374. *See also Hill,* 106 S.Ct. at 370. The analysis in the present case is rather easy. There is no question that Haase made the representations concerning his assets and that the representations were in fact false. The only issue Haase now contests is whether he knew what he was doing. Apart from the obvious problems of a once successful businessman succeeding at trial by claiming that he had no appreciation of the fact that the documents he signed and submitted contained false statements designed to "influence the financial institution," Haase would be faced at trial with his statement in his civil deposition that the idea to falsify the document was arrived at mutually with the PCA officials, as well as other evidence indicating Haase's knowledge of the illegal nature of the scheme. What Haase seems to be claiming is not that he did not know what the impact of his actions was but that he was induced by others into believing his conduct was not illegal. This may be important with regard to sentencing but it is not a defense. Haase, thus, has not satisfied the second prong of the *Strickland* standard.

### Sentencing

Haase's main concern before pleaing guilty was to avoid a jail term. In this aspect of the case Haase contends he was again ill-served by his attorney. At the suggestion of counsel, Haase declined to submit his "version of the offense" to the pre-sentence report. In his opinion from the bench, the district judge found this to be further evidence of the ineffectiveness of Haase's representation. The judge stated that in his experience such a statement never hurt a defendant in sentencing.

Haase did not raise the possibility of a reconsideration or vacation of the sentence until almost five months after the plea. At that time he filed a "Motion for Leave to Amend Motion Pursuant to 28 U.S.C. § 2255." The district judge granted the motion to amend and denied the motion to vacate the sentence. The oral opinion is somewhat cryptic but it appears that the motion was denied because the district court believed that the matter should be heard pursuant to a motion under Rule 35(b) of the Federal Rules of Criminal Procedure rather than section 2255.

■ The problem with the district court's approach is that the court no longer has jurisdiction under Rule 35(b). The Rule provides:

> (b) Reduction in Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Rule 35(b) is jurisdictional; the time to file begins to run when specified and no provision is made for tolling where section 2255 motions are filed within 120 days. *See generally United States v. Kimberlin,* 776 F.2d 1344, 1346–47 (7th Cir.1985). Thus, it is too late for Haase to file a motion in the district court for relief under the rule. Similarly, even if we were to construe the motion to amend as a Rule 35 motion it would be untimely since it was filed more than 120 days after the imposition of sentence.

■ Haase did make, however, a valid motion to reconsider his sentence under section 2255 and he is thus entitled to consideration of that claim on its merits. It appears that the district court was receptive to the possibility of resentencing based on the inadequate representation Haase received but denied the motion based on a misconception of the availability of discretionary relief under Rule 35(b). Given the finding of inadequate representation and the district court's apparent desire to consider resentencing it would be inappropriate for this court to speculate as to the meaning of the district court's denial of the section 2255 motion. This case, therefore, must be remanded to the district court for further consideration of Haase's motion for reconsideration of his sentence under the standards of section 2255. *See generally United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979); *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

### III.

For the above reasons the judgment of the district court denying petitioner's motion pursuant to 28 U.S.C. § 2255 is affirmed in part and reversed and remanded in part.