**UNITED STATES of America, Plaintiff,**

v.

**Cornell BYRD, Defendant.**

**No. 83 CR 608 (86 C 2152).**

United States District Court,
N.D. Illinois, E.D.

Aug. 31, 1987.

James O'Connell, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Cornell R. Byrd, pro se.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Cornell Byrd pleaded guilty to two charges relating to unlawful possession of firearms in 1983. He filed this petition for habeas corpus pursuant to 28 U.S.C. § 2255 in March of 1986, alleging that his guilty plea should be set aside because of alleged ineffective assistance of counsel and prosecutorial misconduct. The parties are before the court on the Government's motion to dismiss the petition. For the reasons set forth below, the court grants the Government's motion to dismiss, and denies Byrd's petition for habeas corpus.

### Procedural Background

In 1983, Byrd was charged in a four count indictment with violations of 18 U.S.C. § 922(h) and 18 U.S.C. Appendix § 1202(a)(1) (83 CR 608). He subsequently pleaded guilty to Counts III and IV [the § 1202(a)(1) counts], and this court sentenced him to twenty months in prison, followed by a five year period of probation.

Byrd appealed his sentence to the Seventh Circuit on the grounds that the sentencing court improperly relied on photographs linking him to the El Rukn street gang. The Seventh Circuit affirmed his sentence in an unpublished order, holding

that the introduction of these photographs in sentencing was not improper under *United States v. Harris*, 558 F.2d 366, 373 (7th Cir.1977). *United States v. Cornell R. Byrd*, 753 F.2d 1076 (7th Cir.1984) (unpublished order). Byrd did not appeal the entry of his guilty plea.

Following the Seventh Circuit's affirmance of his sentence, Byrd filed a petition for habeas corpus pursuant to 28 U.S.C. § 2255. This petition alleged that the court's failure to inform him of the possible delay in the commencement of his sentence rendered his plea involuntary because it was entered without full knowledge of the consequences. *United States v. Cornell R. Byrd*, 83 CR 608 (85 C 8657). This court summarily denied Byrd's § 2255 petition on October 17, 1985, and denied his motion for leave to appeal on November 4, 1985.[1]

Byrd filed this case, his second § 2255 petition, on March 28, 1986. In this motion, he argues that his plea and sentence should be vacated for two reasons. First, he contends that his attorney's ineffective assistance of counsel prompted his decision to enter into the plea agreement. Second, he alleges that the United States Attorney prosecuting the case allegedly forged government money vouchers for grand jury witnesses in order to influence their testimony. The Government urges the court to dismiss the petition on the grounds that these claims, even if proven, are insufficient to invalidate Byrd's guilty plea.[2]

**Ineffective Assistance of Counsel**

The sixth amendment right to counsel necessarily includes the right to effective assistance of counsel. *Key v. United States*, 806 F.2d 133, 138 (7th Cir.1987). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test to evaluate claims of ineffective assistance of counsel. Under *Strickland*, a defendant must establish that his "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068. When applying this two-part test,

> 'Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time.' ... In particular, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'

*Darden v. Wainwright*, 477 U.S. 187, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986), citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), the Supreme Court held that the

---

1. The court dismissed this claim on a minute order because it is clear that the sentencing judge need not inform a defendant of such a collateral effect of his plea agreement. *Faulisi v. Daggett*, 527 F.2d 305, 308–09 (7th Cir.1975).

2. The Government argues that Byrd has waived these arguments because he did not raise them on direct appeal, and he cannot establish "cause" and "prejudice" for his failure to raise these claims. In support of this argument, the government cites five cases in which this waiver theory was applied. None of these cases involve waiver stemming from the failure to appeal a guilty plea; however, although a defendant may appeal from his entry into a guilty plea, *United States v. Fisher*, 772 F.2d 371, 373 (7th Cir.1985), "appellate courts generally do not

consider claims of ineffective assistance of counsel on direct appeal from guilty pleas." *Id.* (citations omitted). The Government has not cited any authority for the proposition that the cause and prejudice standard set forth in *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), is equally applicable to collateral proceedings where a defendant fails to appeal the entry of a guilty plea; and the Seventh Circuit did not apply this principle in its two recent cases where a defendant sought to vacate his guilty plea on sixth amendment grounds. *See Key v. United States*, 806 F.2d 133 (7th Cir.1987); *Haase v. United States*, 800 F.2d 123 (7th Cir.1986). The court finds that it need not resolve the waiver issue because it is clear that Byrd's constitutional claims are meritless.

two-part *Strickland* test also applies to collateral proceedings in which the defendant seeks to vacate his guilty plea on the grounds of ineffective assistance of counsel. *See Key*, 806 F.2d at 138; *Haase v. United States*, 800 F.2d 123, 128 (7th Cir. 1986).

Byrd's sixth amendment claim rests on three alleged misrepresentations of his trial counsel. First, Byrd alleges that his attorney told him that, if he pleaded guilty, the maximum sentence he would receive from the judge was one year in jail, plus probation, and that his nine months in state custody would apply to any sentence Judge Nordberg might impose. Second, he contends that his attorney advised him to plead guilty because there was "no way that he could win his case; and [it was] the only chance [he] had to keep from spending fourteen years in jail." Pet. for Habeas Corpus at 4½. According to Byrd, this advice was constitutionally deficient because his attorney knew that the four-count indictment was multiplicitous and that Byrd could never have been convicted and sentenced on all four counts. Finally, Byrd alleges that his attorney advised him that, if he pleaded guilty, the Government would agree not to introduce evidence of a former conviction on a related case before Judge Shadur. For the following reasons, the court finds that none of these charges are sufficient to meet the *Hill/Strickland*

test for vacating guilty pleas based on ineffective assistance of counsel.

■ Byrd's first allegation of error concerns his attorney's alleged inaccurate advice regarding the length of his sentence and when it would begin to run.[3] In *Key v. United States*, the defendant alleged that his plea was involuntary because his attorney had misrepresented when he would be eligible for parole. The Seventh Circuit held that the attorney's inaccurate prediction did not render the guilty plea involuntary, nor did it establish that Key had received ineffective assistance of counsel. First, the court reviewed the plea hearing, emphasizing the deference which should be accorded to Key's statements in the course of that hearing:

> A guilty plea must be both a knowing and a voluntary act. To ensure this, Federal Rule of Criminal Procedure 11(d)[4] requires that the trial judge ask the defendant specific questions concerning the voluntariness of the plea agreement. The questions create a record that can be used in future appeals and collateral attacks. Furthermore, the record is entitled to a presumption of verity.... The Rule 11 questioning has special importance to collateral proceedings. In *Thompson v. Wainwright*, 787 F.2d 1447 (11th Cir.1986), the court, citing *Blackledge v. Allison*, 431 U.S. 63,

**3.** 28 U.S.C. § 2255 provides that, "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." Byrd's present claim regarding the commencement of his sentence is virtually identical to the claim raised in his first § 2255 motion, except that this motion blames his attorney for the alleged misunderstanding with respect to when his federal sentence would begin. When confronted with a successive habeas petition, "[t]he judge is permitted, but not compelled, to decline to entertain [a repetitive] application, and then only if he 'is satisfied that the ends of justice will not be served' by inquiry into the merits." *Sanders v. United States*, 373 U.S. 1, 12, 83 S.Ct. 1068, 1075, 10 L.Ed.2d 148 (1963). The decision whether to entertain a successive motion is addressed to the sound discretion of the district court. *Id.* at 18, 83 S.Ct. at 1079. *See Humphrey v. United States*, 766 F.2d 1522, 1524 (11th Cir.1985); *Lawary v. United States*, 599 F.2d 218, 221 (7th Cir.1979). The court finds that the successive

application provision of section 2255 does not bar Byrd's second habeas corpus petition because the present motion attacks his attorney's alleged unconstitutional conduct, rather than the court's. Given the importance of ensuring effective assistance of counsel to criminal defendants, the court finds that the ends of justice require discussion of the merits of Byrd's second application.

**4.** Fed.R.Crim.P. 11(d) provides:

> The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

73–4, 97 S.Ct. 1621, 1629 [52 L.Ed.2d 136] (1977), stated 'that the representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding.' *Thompson,* 787 F.2d at 1460. Moreover, the petitioner's 'declarations in open court carry a strong presumption of verity.' *Id., citing Blackledge,* 431 U.S. at 74, 77 S.Ct. at 1629 [52 L.Ed.2d 136].

*Key,* 806 F.2d at 136 (citations omitted). *See also Haase,* 800 F.2d at 127. After reviewing the colloquy between Key and the court, the Seventh Circuit held that Key's allegation of a collateral promise regarding his sentence, which was never raised at the plea hearing, failed to establish that the plea was involuntary. *Key,* 806 F.2d at 137.

The facts in this case parallel the situation in *Key.* Rule 11(d) is designed to ensure a "meaningful colloquy that elucidates and preserves in the record the defendant's state of mind, [his] knowledge of the rights foregone, the factual basis for the plea, and [his] understanding and acknowledgement of the offense to which he is pleading." *Haase,* 800 F.2d at 127.

Byrd alleges that his attorney told him that, if he pleaded guilty, he would receive a maximum sentence of one year, and his federal sentence would run concurrently with his state sentence. After reviewing the record of Byrd's entry into the plea agreement, the court concludes that his allegations regarding his attorney's promises regarding his sentence are insufficient to overcome the 'presumption of verity' in the Rule 11(d) proceeding, and fail to establish that his plea was involuntary.

The proposed terms of the plea agreement were orally presented to the court in Byrd's presence. The Government stated that, if Byrd pleaded guilty to the § 1202(a)(1) counts, it would voluntarily dismiss the § 922 counts at the time of sentencing, and it would agree not to use this plea and conviction in another case pending before Judge Shadur.[5] The Government also indicated that it would request incarceration for Byrd's two violations of the statute. Before accepting Byrd's plea, this court followed the strictures of Rule 11, notifying Byrd of the nature of the charges against him and the penalties allowed by law for violation of these statutes.[6] Byrd was placed under

---

**5.** Byrd was also indicted in an arson investigation for violations of 18 U.S.C. §§ 371 and 844(i). He was convicted of both counts in 1984, and Judge Shadur sentenced him to ten years in custody and five years probation. The Seventh Circuit subsequently affirmed his conviction. *United States v. Byrd,* 750 F.2d 585 (7th Cir.1984). Byrd has filed two § 2255 petitions relating to his conviction in 83 CR 607. The first was denied after an evidentiary hearing in 1985, and was affirmed on appeal, *Byrd v. United States,* 806 F.2d 971 (7th Cir.1986) (unpublished order); and the second is still pending before Judge Shadur.

**6.** THE CLERK: You do affirm that the statements you are about to give in the case now before the Court will be the truth, the whole truth and nothing but the truth? This you do affirm under the pains and penalties of perjury?
THE DEFENDANT: Yes ma'am, I do.
THE COURT: All right. Now Mr. Byrd, you understand now that all the answers that you will be giving here in open Court will be under oath and if you do not answer truthfully your answers may later be used against you in a prosecution for perjury or false statement, do you understand that?
THE DEFENDANT: Yes, sir.

. . . . .

THE COURT: Now, as I understand it, the only agreement between the government and the defendant is what has been presented here in open Court, is that correct?
[U.S. ATTORNEY]: That's correct, Judge.
THE COURT: All right. And I will indicate that the Court would abide by that agreement.

. . . . .

THE COURT: All right. It's the Court's duty now to advise you of the effect and consequences of your entering a plea of guilty at this time and what would be the maximum penalty that could be assessed or imposed on the defendant by reason of his plea of guilty to Counts 3 and 4?
[U.S. ATTORNEY]: Judge, each count carries a possible two year penalty and a possible $10,-000.00 fine, so the total is a possible four years imprisonment with a possible fine of $20,000.00.
THE COURT: All right. Now, you understand that by pleading guilty to those two counts you do subject yourself to up to four years imprisonment and up to $20,000.00, then, in fines?
THE DEFENDANT: Yes, sir, your Honor.
THE COURT: All right. . . . [You may also] be sentenced to probation for a period of up to 5 years, which can include a combination of cus-

oath. The court told Byrd that the maximum penalty for Counts III and IV was four years incarceration and a $20,000 fine, and questioned Byrd with respect to any promises, predictions, or representations regarding his plea that were not contained in the plea agreement. Byrd affirmed that the only agreement between the Government and himself was the one presented in open court, and that the Government had correctly stated the terms of the agreement they had reached. He never revealed any collateral promises to this court, and expressly denied that there were any other promises or that he had relied on any other promises.

When questioned with respect to whether he had been given any understanding regarding the sentence he would receive, Byrd responded negatively. This court specifically told Byrd that his sentence would be considered by the sentencing council, which would make non-binding recommendations with respect to the appropriate sentence for him. Thus, although he was given several opportunities to reveal the alleged improper representations of his attorney, Byrd expressly denied, under oath, the existence of any promises aside from those presented to the court. Accordingly, the court finds that his present claim, which he raises nearly three years after his entry into the plea agreement, and which is flatly contradicted by his statements under oath at the plea hearing, fails to override the presumptive aspect of the Rule 11 questioning between himself and this court. *See Key*, 806 F.2d at 137 (alleged representations regarding parole, not mentioned in the Rule 11 hearing, are insufficient to set aside guilty plea as involuntary).

■ Byrd also alleges that his plea should be set aside because his attorney's advice regarding his sentence was constitutionally deficient. Byrd does not explain why he did not raise this claim in his appeal of his sentence or his initial § 2255 motion attacking the commencement of his sentence, much less include this in his sworn statements at the plea hearing or the sentencing. The court finds that, although his counsel's alleged advice regarding his sentence was "objectively unreasonable" under *Strickland*,[7] Byrd cannot satisfy the

---

tody, fine and probation. Do you understand that as well?
THE DEFENDANT: Yes, sir.

. . . . .

THE COURT: All right. *Now, aside from the plea agreement, oral plea agreement, in effect, that has been testified to and presented here that you have entered into with the government, has anyone promised you any reward or threatened you or otherwise forced or coerced you into pleading guilty to these charges?*
THE DEFENDANT: *No.*
THE COURT: All right. Now, *do you believe that there is any understanding or agreement as to the sentence that you will receive from this Court?*
THE DEFENDANT: *No.*

. . . . .

[THE COURT]: I do want to indicate that the sentence to be imposed in this case will be considered by the Sentencing Council of this Northern District of Illinois. That is a group of the district judges who meet each week to review the sentences for the week and they give their advice and recommendation to the individual sentencing judges. It's not binding on any particular sentencing judge but he does get the benefit of additional advice and counsel and experience by having the views of other judges as well. And that will be considered by the Sentencing Council.

In the meantime, the Court will order that the United States Probation Office prepare the customary presentence investigation report of the defendant for the Court's use in connection with the sentencing and, as well, for the use of the Sentencing Council.

Now, I'm sure, as your attorney has advised you, or will advise you, Mr. Byrd, it's in your best interest then to cooperate with the Probation officer in furnishing information for that report because the report is important to the Court in determining what should be an appropriate sentence.

Tr. October 31, 1983 pp. 6, 8, 9, 12, 15, 16 (emphasis supplied).

7. This alleged representation regarding the commencement of his federal sentence is incorrect, because a district judge has no power to order that these sentences run concurrently. As the Seventh Circuit noted in *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980):

Under 18 U.S.C. § 3568, a federal sentence commences to run when the defendant is received at a place of confinement for service of the sentence. Under that section, the computation of sentence credits is computed by the Attorney General, not the sentencing judge. The sentencing judge has no power to make a

second prong of the test: establishing that, but for this representation with respect to his sentence, he would not have pleaded guilty and he would have insisted on going to trial.

Byrd's habeas corpus petition alleges that his attorney

[t]old me that with the deal he had made for me with the Government the Judge would give me probation at the most one (1) year in jail[.] He told me that I already had nine (9) months in on whatever sentence Judge Nordberg could give me.... Had I known that my federal time was not going to start the day I pleaded guilty in Judge Nordberg's court, I never would have entered that plea.

Pet. for Habeas Corpus at 4½. As set forth above, this allegation directly conflicts with Byrd's sworn statement at the plea hearing. In *Hill v. Lockhart*, the petitioner sought to vacate his plea based on his attorney's inaccurate advice regarding his parole eligibility. Applying the *Strickland* test, the Supreme Court held that the petitioner was not entitled to a hearing on his sixth amendment claim because he had failed to establish any "prejudice" stemming from his counsel's erroneous advice. The Court explained:

The 'prejudice' requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.... Petitioner did not allege in his habeas corpus petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular em-

phasis on his eligibility in deciding whether or not to plead guilty.

*Hill*, 106 S.Ct. 370–71.

In *Key*, the defendant raised a sixth amendment claim very similar to the claim in Byrd's present motion. Applying the standards enunciated in *Hill*, the court rejected the defendant's allegation of "prejudice" stemming from his attorney's promises of early release, stating:

[B]are allegations of alleged promises is insufficient to show actual prejudice for purposes of *Hill*.... [A] defendant must do more than merely allege a promise by counsel; he or she must provide some evidence that allows the court to meaningfully assess his or her claim. A defendant in such a situation might allege, in addition to the *Hill* requirements, what the terms of the alleged promises were; when, where, and by whom such promises were made; and the precise identity of any witnesses to the promise.... Yet even making these allegations may not be sufficient to warrant a section 2255 evidentiary hearing if the allegations do not overcome the presumption in the record.

*Key*, 806 F.2d at 139. In the present case, although Byrd alleges in some detail the claim of his attorney's erroneous advice, the court finds that this claim, like the alleged promises of early release in *Key*, does not overcome the presumption of correctness in the record. As the *Key* court emphasized, a mere allegation that he would have pleaded differently and gone to trial is insufficient to establish the second prong of the *Hill* test. *Id.* Byrd has not demonstrated that "there is a reasonable probability that the result of the proceeding would be different ... [and] he would not have pleaded guilty if he were advised differently." *Key*, 806 F.2d at 139. Accordingly, the court rejects Byrd's sixth amendment claim based on the alleged misrepresentations of his counsel regarding the length and commencement of his sentence.

---

federal sentence concurrent with a prior state sentence.
*Accord, United States v. Dovalina*, 711 F.2d 737, 740 (5th Cir.1983); *Faulisi v. Daggett*, 527 F.2d

305, 308–09 (7th Cir.1975); *Zahn v. Kipp*, 218 F.2d 898, 900 (7th Cir.1955).

Byrd's remaining sixth amendment claims fall far short of satisfying either prong of the *Hill/Strickland* test. Byrd alleges that his attorney knew that the indictment was multiplicitous, yet failed to raise this argument before the court. In support of this claim, Byrd has attached copies of his attorney's handwritten notes containing summaries of case law addressing the criminal statutes under which Byrd was charged. The indictment charged Byrd with two violations of 18 U.S.C. § 922(h) and two violations of 18 U.S.C. App. § 1202(a)(1). Section 922(h) prohibits the receipt of a firearm by an individual with a prior felony conviction, and carries a maximum sentence of five years and a $5000 fine. Section 1202(a) prohibits the receipt, possession or transportation of a firearm by an individual with a prior felony conviction, and carries a maximum sentence of two years in prison and a $10,000 fine.

■ As the attorney's notes indicate, when Byrd was charged in 1983, some courts had held that a defendant could not be charged with violations of both § 922(h) and § 1202(a), when the same facts supported the charge of receipt under § 922(h) and possession under § 1202(a). *See United States v. Hodges,* 628 F.2d 350 (5th Cir.1980); *United States v. Larson,* 625 F.2d 67 (5th Cir.1980); *United States v. Burton,* 629 F.2d 975 (4th Cir.1980), *cert. denied,* 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); *United States v. Square,* 516 F.Supp. 28 (E.D.Va.1981). When these notes were written, however, there was a conflict in the circuits regarding the multiplicity of an indictment charging violations of both these sections based on the same underlying facts. The Seventh Circuit had expressly declined to de-

cide the issue, *United States v. Oliver,* 683 F.2d 224 (7th Cir.1982), and the Tenth Circuit had held that prosecution, conviction and sentencing under both statutes was constitutionally permissible. *United States v. Larranaga,* 614 F.2d 239 (10th Cir.1980).[8] Thus, contrary to Byrd's assertion, these notes do not establish that a challenge to the indictment on the grounds of multiplicity would have been successful. Although it might have been more prudent for his attorney to raise this issue in the pretrial motions, given the uncertainty of the law on this issue, his failure to do so was not "objectively unreasonable." If Byrd had gone to trial and the court had rejected the multiplicity argument, then he would have been eligible for a fourteen year sentence.

■ In any event, even if the court forced the Government to elect between Section 922(h) and Section 1202(a), Byrd would have been exposed to a potential sentence of ten years. The decision whether to proceed under § 922(h) or § 1202(a) is within the sole province of the Government, and the Government could have chosen to pursue the counts under § 922(h), which carried the greatest potential sentence. *See United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (defendant has no voice in the decision whether to indict under § 922(h) or 1202(a)). Under the terms of the plea agreement, however, the government agreed to drop the § 922(h) claims, which carried a maximum sentence of ten years. By pleading guilty to the two § 1202(a) claims, Byrd reduced his maximum potential sentence to four years. Byrd's petition does not allege that he would not have pleaded guilty if he knew

---

**8.** The Seventh Circuit addressed the multiplicity issue in *United States v. Martin,* 732 F.2d 591, 592 (7th Cir.1984), and followed the majority of the circuits, which held that a defendant could not be punished under both statutes for the receipt and continuous possession of a firearm. The Supreme Court resolved the conflict in the circuits in *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), and held that a convicted felon could be tried for violations of both statutes involving the same firearm, but he could not be convicted and sen-

tenced under both statutes. Neither of these decisions assist Byrd's sixth amendment claim, however, because they both were decided long after Byrd's attorney allegedly failed to advise him that he could be convicted and sentenced under both statutes. *Strickland* does not require an attorney to predict the future developments in the law. At the time of Byrd's plea, the multiplicity issue was unresolved; therefore, it was not objectively unreasonable for Byrd's attorney not to raise this argument prior to his entry into the plea agreement.

the maximum sentence was ten years rather than fourteen years. Thus, even if it was "objectively unreasonable" for his attorney to omit the multiplicity argument in the pretrial motions, Byrd has not established any "prejudice" under *Hill* stemming from his attorney's failure to raise this argument. Accordingly, under the circumstances of this case, the court finds that the fact that Byrd's attorney did not raise the multiplicity argument, and thereby reduce the maximum potential sentence from fourteen years to ten years, fails to satisfy the *Hill* test for invalidating guilty pleas based on ineffective assistance of counsel.

■ Finally, Byrd objects to his attorney's alleged advice that, if he pleaded guilty, the Government would not introduce this conviction and a prior state court conviction at the trial before Judge Shadur. The court notes that Byrd's present account of this "advice" directly conflicts with the statements of both Byrd and the United States Attorney at the plea hearing. The Government stated that, in exchange for the plea, it would not introduce his conviction on the weapons charges at the trial before Judge Shadur. It never mentioned the fact of an earlier conviction. Byrd told the court under oath that this was the only evidentiary promise that the Government made in exchange for his plea. Thus, the Rule 11 proceeding directly refutes Byrd's present account of this alleged "promise." [9]

Even if Byrd's rendition of this promise were correct, it would still be insufficient to satisfy the requirements to set aside a guilty plea under *Hill.* According to Byrd, this advice was in error, as his prior conviction could not be introduced at his weapons trial or the trial before Judge Shadur because it was over fifteen years old. Byrd apparently considers this evidence inadmissible under Fed.R.Evid. 609(b), which prohibits the admission of convictions over ten years old "unless the court determines, in the interests of justice, that the probative value of the convictions supported by sufficient facts and circumstances substantially outweighs its prejudicial effect."

The court finds that this alleged representation was not objectively unreasonable for two reasons. First, the indictment charged Byrd with violations of 18 U.S.C. §§ 922(h) and App. 1202(a), both of which prohibit the possession and receipt of a firearm by a felon. The indictment also alleges that Byrd has a prior felony conviction in the state of Wisconsin in 1969. Contrary to Byrd's apparent belief, Rule 609(b) would not govern the admission of his prior conviction on the weapons charges. The existence of a prior felony conviction is an essential element of any indictment charging violation of Sections 922(h) or 1202(a). Thus, his prior conviction would not be introduced for the purpose of attacking his credibility, *see* Fed.R.Evid. 609(a); it would be introduced to prove a substantive element of the charges under §§ 922(h) and 1202(a). Accordingly, because Byrd's attorney was correct in apprising him that the jury in his weapons trial could be informed of his prior conviction, Byrd's claim regarding the alleged impropriety of this communication with respect to his weapons charges is meritless.

Second, with respect to the charges before Judge Shadur, it is clear that a conviction on the weapons charges would ordinarily be admissable under Fed.R.Evid. 609(a). Furthermore, with respect to the 1969 conviction, the court notes that the text of Rule 609(b) does not contain an absolute prohibition on the admissibility of prior convictions over ten years old. Under certain circumstances, these convictions may be admissible. Thus, Byrd's attorney

---

**9.** The Government presently denies that it agreed not to use the weapons conviction in the trial before Judge Shadur. This denial is flatly contradicted by the record. The transcript of Byrd's plea agreement clearly reveals that this evidentiary promise was part of the plea agreement. *See* Tr. October 31, 1983. In the future, the Government should check its records and plea agreements before making such an incorrect and unsupported statement in a habeas corpus proceeding. In any event, the existence of this promise is not important to this habeas proceeding, because there is no allegation that the Government breached this agreement in its prosecution of Byrd in Case No. 83 CR 607.

was correct if he told him that this prior conviction might be admissible against him at the trial before Judge Shadur. In any event, the court notes that Byrd has not alleged that this evidentiary representation was a motivating force behind his entry into the guilty plea. Thus, even if this advice were objectively unreasonable under *Hill*, which it clearly is not, it would not undermine the plea agreement because Byrd has not claimed that he would have pleaded differently if his attorney had not informed him that his prior conviction might be admissible.

## Prosecutorial Misconduct

■ Byrd's final attempt to escape the effects of his plea agreement is the claim that his conviction and sentence under the plea agreement is unconstitutional because the government forged money vouchers to induce witnesses to testify before the grand jury. Byrd does not explain how this allegation bears any relationship to his entry into the guilty plea. Byrd admitted, under oath, the facts underlying his indictment in open court. The court agrees with the Government that, even if this allegation were true, it could not have affected Byrd's decision to enter the guilty plea.

## Conclusion

For the reasons set forth above, the court denies Byrd's section 2255 petition for habeas corpus. His allegations of attorney error are insufficient to constitute a sixth amendment claim under *Hill v. Lockhart*, and he fails to demonstrate how the alleged prosecutorial misconduct had any effect on his entry into the plea agreement.