Ben Fidel SALAZAR, Plaintiff and Appellant,

v.

WARDEN, UTAH STATE PRISON, Defendant and Appellee.

No. 910533.

Supreme Court of Utah.

May 5, 1993.

Joseph C. Fratto, Jr., Salt Lake City, for plaintiff and appellant.

R. Paul Van Dam, Atty. Gen., David B. Thompson, Asst. Atty. Gen., Salt Lake City, for defendant and appellee.

DURHAM, Justice:

Plaintiff Ben Fidel Salazar pleaded guilty to first degree murder, a capital felony, and was sentenced to life imprisonment. He subsequently filed a petition for a writ of habeas corpus, alleging that (1) he had been denied the effective assistance of counsel, (2) the plea had been coerced, and (3) the trial court had failed to comply with rule 11(5) of the Utah Rules of Criminal Procedure in taking his plea. After an evidentiary hearing, the court denied the petition. Salazar appeals, and we affirm.

Salazar was charged with first degree murder and aggravated sexual assault in connection with the strangulation death of Charlotte Montoya. The information also alleged as an aggravating factor that Salazar previously had been convicted of a second degree felony involving the use or threat of violence to a person. On September 7, 1989, Salazar pleaded guilty to first degree murder, and in exchange the prosecution dropped the charge of aggravated sexual assault and agreed not to seek the death penalty at sentencing.

At the plea hearing, Salazar presented an affidavit setting forth the elements of the offense, a description of the conduct for which he was criminally liable, the rights he was waiving by pleading guilty, the terms of the plea bargain, and the possible penalties he could face.[1] The affidavit also stated that Salazar was fifty years old, had attended school through the eighth grade, and was able to read and understand English. Salazar added a handwritten notation to this paragraph indicating that he had also received a high school equivalency degree.

The court asked Salazar if he had read and understood the affidavit, and Salazar replied that he had. The court inquired whether his attorneys had explained the elements of the crime to which he was pleading and that the State bears the burden of proving those elements, and Salazar responded, "Yes, Your Honor." The court then asked Salazar's attorneys whether they had "thoroughly" gone over the elements with him, and they responded in the affirmative. They also told the court that they believed Salazar understood the elements. Next, the court explained to Salazar the rights he was waiving, and Salazar stated that he understood he was waiving those rights. Finally, Salazar signed the affidavit in court, and the judge accepted

---

1. The affidavit set forth the elements as follows:
 The elements of the crime of which I am charged is [sic] as follows: Defendant intentionally or knowingly caused the death of Charlotte Montoya under the following circumstance: the defendant has previously been convicted of a Second Degree Felony involving use or threat of violence to a person.

 My conduct, and the conduct of other persons for which I am criminally liable, that constitutes the elements of the crime charged is as follows: On or about March 28, 1988, Ben F. Salazar choked Charlotte Montoya and caused knowingly or intentionally her death.

his plea.[2]

Salazar filed this petition for a writ of habeas corpus on June 18, 1991.[3] He alleged that his trial attorneys were ineffective, that his plea was involuntary because it was entered "with coercion and undue influence," and that the trial court had failed to comply with rule 11(5) of the Utah Rules of Criminal Procedure. In support of the last claim, Salazar alleged that the court failed to adequately inquire as to his understanding of (1) the nature and elements of the offense to which he was pleading guilty, (2) the minimum and maximum sentences that could be imposed, and (3) the terms of the plea agreement, as required by rule 11(5)(d)–(f). As a result, Salazar alleged, he was restrained "in violation [of] and contrary to the provisions of Amendments V and VI, *United States Constitution* and Article I, Sections 7 and 12, *Constitution of the State of Utah.* "

The habeas court[4] held an evidentiary hearing at which Salazar and both of his trial attorneys testified. Salazar testified that his attorneys never discussed the elements of the crime with him. Specifically, he testified that they never informed him that he would be pleading to "intentionally or knowingly" causing Ms. Montoya's death. He stated that while he had admitted killing Ms. Montoya, he had always maintained that the killing was not intentional or knowing. Salazar also testified that he never read the affidavit; rather, he only had a chance to "glance" at it while in the holding cell before entering his plea. Salazar admitted that he saw the portion of the affidavit stating that he was charged with "intentionally or knowingly" killing Ms. Montoya, but he explained that when he protested to one of his attorneys, she just ignored him.

One of Salazar's former trial attorneys, Frances Palacios, testified that while she had no independent recollection of going through the affidavit and explaining the elements of the crime to Salazar, she would not have signed the affidavit if she had not gone over it with him first. She also stated that she believed he understood what he was admitting. Salazar's other trial attorney, James Bradshaw, testified that he specifically discussed the mens rea element of first degree murder and that Salazar was not reluctant to admit to an "intentional" killing as defined by statute. And while Mr. Bradshaw did not specifically recall going over the elements with Salazar, he did state, "I would not represent to the Court that I had done so unless in fact, I had gone over every element of the offense, and all of the ramifications of the potential penalties, and all of the Constitutional rights that he waives by entering that ... plea."[5] Mr. Bradshaw further

**2.** At one point, Salazar almost backed out of the bargain. The State informed the court that while it would not provide any evidence in aggravation in the penalty phase, it would argue that he should be sentenced to life imprisonment. Salazar responded, "Well, if they're goin' to go for that, I'll just go for the Death Penalty. I'm not goin' to spend the rest of my life in prison." After a brief conference, one of Salazar's attorneys asked him on the record, "Ben, at this point, having heard that the State intends to introduce evidence and argue for Life Imprisonment, while not arguing for the Death Penalty; do you still wish to go ahead with the Plea Negotiations as we have done thus far?" Salazar replied, "Yes."

**3.** Salazar had filed a motion to withdraw his guilty plea in September 1990. After counsel was appointed to represent him, he filed this petition for habeas corpus. At the hearing, the motion to withdraw was dismissed as untimely under section 77–13–6(2)(b) of the Utah Code, which provides that such a motion must be brought within thirty days after the date of the entry of the plea. Salazar did not appeal from this ruling; he challenges only the denial of the habeas petition.

**4.** The habeas petition was heard by the same judge who accepted the guilty plea.

**5.** Ms. Palacios and Mr. Bradshaw both signed a "certificate of attorney," which stated:

I certify that I am the attorney for BEN FIDEL SALAZAR, the defendant above, and that we know he has read the statement or that I have read it to him and I have discussed it with him and believe that he fully understands the meaning of its contents and is mentally and physically competent. To the best of my knowledge and belief after an appropriate investigation, the elements of the crime and the factual synopsis of the defendant's criminal conduct are correctly stated and these, along with the other representations and declarations made by the defendant

explained that any reluctance to plead guilty stemmed from Salazar's concern over spending the rest of his life in prison, not from a refusal to admit to intentionally or knowingly killing Ms. Montoya.

The court denied the petition. The court found that "prior to the entry of the plea of guilty defense counsel reviewed the written statement with the petitioner, Salazar; that the elements and facts of the crime were explained to Salazar; that the constitutional rights of Salazar were contained in said statement and explained to Salazar. Further that the penalty for the crime charged was explained to Salazar as were the negotiations of the parties for the plea entered." The court also concluded that it had complied with rule 11 in taking Salazar's plea, that Salazar had received effective assistance of counsel, and that Salazar made his plea knowingly and voluntarily.

 On appeal, Salazar challenges only the court's conclusion that it complied with rule 11 in taking his plea. Because we hold that a rule 11 violation does not warrant habeas corpus relief absent the deprivation of a constitutional right, we affirm without treating the compliance issue.[6]

A writ of habeas corpus is available only "where the petitioner has suffered an obvious injustice or a substantial denial of a constitutional right." *Gerrish v. Barnes*, 844 P.2d 315, 319 (Utah 1992). Former Rule of Civil Procedure 65B(i)(1), which was in effect when Salazar filed his petition, allowed relief by writ of habeas corpus to a prisoner "who asserts that in any proceedings which resulted in his commitment there was a substantial denial of his rights under the Constitution of the United States or of the state of Utah, or both." Utah R.Civ.P. 65B(i)(1) (1990).[7] Salazar

does not claim any errors other than the purported failure to comply with Utah Rule of Criminal Procedure 11(5). Thus, he is entitled to relief only if the alleged violation of rule 11 is also a violation of his constitutional rights.

 Because a guilty plea involves the waiver of a number of important rights, including the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination, a guilty plea is not valid unless it is knowing and voluntary. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). And because a guilty plea is in effect an admission not only that the defendant did certain acts, but also that the defendant committed a certain crime, such a plea cannot be voluntary "unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)); *accord Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983) (also quoting *Smith*); *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1170. Rule 11 is designed to protect these rights by ensuring that the defendant receives full notice of the charges, the elements, how the defendant's conduct amounts to a crime, the consequences of the plea, etc. However, compliance with rule 11 is not *constitutionally* required.

Utah's rule 11 is patterned after Federal Rule of Criminal Procedure 11. Federal courts have established that noncompliance with the federal rule is not necessarily a constitutional violation, and therefore, a

---

in the foregoing affidavit, are accurate and true.

**6.** We stress that we are not retreating from our holding in *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), restated in *State v. Maguire*, 830 P.2d 216, 217 (Utah 1992), that the trial court must strictly comply with rule 11. If this were a direct appeal from denial of a motion to withdraw a guilty plea, for example, failure to strictly comply with the rule would be grounds for reversal. We merely hold that on collateral attack of a

conviction, the petitioner must show a constitutional violation to obtain relief.

**7.** This rule was substantially amended effective September 1, 1991. Rule 65B(b)(1) now provides that relief may be available to anyone whose "commitment resulted from a substantial denial of rights." We need not decide whether the new language was intended to broaden the scope of the writ to provide a remedy for nonconstitutional violations.

claim that the trial court failed to comply with the rule is not itself a sufficient ground for habeas corpus relief. For example, in *Haase v. United States*, 800 F.2d 123 (7th Cir.1986), the petitioner sought habeas corpus relief on the ground that the trial court did not comply with federal rule 11 in taking his guilty plea. The court agreed that the plea might not have complied with the rule but refused to grant relief. The court noted that since the petitioner was seeking habeas corpus relief rather than pursuing a direct appeal,

> the petitioner must establish more than a failure to adhere to the rules governing the taking of pleas. Relief will only be granted where the error is jurisdictional, constitutional, or is a "fundamental defect which inherently results in a complete miscarriage of justice." While the circumstances surrounding Haase's plea of guilty are unfortunate and should have been avoided, none of Haase's objections going to the validity of the plea warrant relief under [28 U.S.C.] § 2255.
>
> ....
>
> ... This is because the core constitutional protection at issue here is the requirement that a guilty plea must be truly voluntary. *Rule 11 is a device for protecting the right but the scope of Rule [11] does not equal the more limited scope of the constitutional right.* Thus, a guilty plea is constitutionally infirm, as opposed to only violative of Rule 11, when the plea is not knowing and intelligent.

800 F.2d at 126–27 (emphasis added) (citations omitted); *see also United States v. Timmreck*, 441 U.S. 780, 783–84 (1979) (because petitioner claimed only a technical violation of rule 11 rather than constitutional prejudice, the Court would not grant habeas relief; rule 11 does not set forth constitutional requirements). Since the United States Constitution does not require compliance with federal rule 11 in taking a guilty plea, it does not require compliance with Utah's rule 11.

Further, compliance with Utah's rule 11 is not required under the Utah Constitution. *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), which first set forth the requirement of strict compliance with rule 11 in taking a guilty plea, involved a direct appeal from a conviction based on a guilty plea. While our decision was based on constitutional concerns, it did not purport to establish constitutional *requirements.* Similarly, *State v. Smith*, 777 P.2d 464 (Utah 1989), and *State v. Maguire*, 830 P.2d 216 (Utah 1992), both involved direct appeals, and both cases involved construction and application of rule 11 rather than the Utah Constitution.

■ Thus, a failure to comply with Utah's rule 11 in taking a guilty plea does not in itself amount to a violation of a defendant's rights under either the Utah or the United States Constitution. To obtain a writ of habeas corpus, a petitioner must show more than a violation of the prophylactic provisions of rule 11; he or she must show that the guilty plea was in fact not knowing and voluntary. Further, a court considering such a claim is not limited to the record of the plea hearing but may look at the surrounding facts and circumstances, including the information the petitioner received from his or her attorneys before entering the plea. *See, e.g., Henderson*, 426 U.S. at 644–47, 96 S.Ct. at 2257–58 (upholding findings of trial court, made after evidentiary hearing, that petitioner's attorney never explained elements of crime to his client); *Gaddy v. Linahan*, 780 F.2d 935 (11th Cir.1986) (remanding for evidentiary hearing to determine what information petitioner received and understood concerning elements of crime before entering his plea).

■ After the hearing on Salazar's claim, the court found that the elements and facts of the crime were explained to Salazar, that he understood the possible penalties, and that he understood the plea bargain. Salazar does not challenge these findings, and given the evidence received at the hearing, we cannot say that they are clearly erroneous. *See Termunde v. Utah State Prison*, 789 P.2d 709, 710 (Utah 1990). Further, the trial court concluded that the plea "was a voluntary and intelligent choice by Salazar and that the same

was entered knowingly and voluntarily by Salazar." Salazar likewise does not challenge this conclusion. Because Salazar has failed to establish that his constitutional rights were violated, he is not entitled to relief by habeas corpus.

The decision of the trial court is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.