David L. ADAMS, Petitioner–Appellant,

v.

R.S. PETERSON, Superintendent of
O.S.C.I., Respondent–Appellee.

No. 87–4191.

United States Court of Appeals,
Ninth Circuit.

Argued En Banc and Submitted
March 19, 1992.

Decided June 24, 1992.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Or., for petitioner-appellant.

Rives Kistler, Asst. Atty. Gen., Salem, Or., for respondent-appellee.

Before: WALLACE, Chief Judge, TANG, PREGERSON, NORRIS, WIGGINS, BRUNETTI, KOZINSKI, O'SCANNLAIN, TROTT, FERNANDEZ, and KLEINFELD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

David Adams appeals from the district court's dismissal of his petition for a writ of habeas corpus. Adams claims that his Oregon convictions for burglary, rape, and sodomy violated his right to due process of law because a state court judge entered judgment on stipulated facts and failed to advise him on the record of the legal consequences of the stipulation. We now affirm.

I

In November 1981, Adams, who was seventeen years old at the time, was indicted in the Lane County Circuit Court on charges of first-degree rape, sodomy, and burglary of a female schoolteacher. Adams agreed to stipulate to certain facts at trial rather than to proceed through the more usual presentations of evidence by both the prosecution and the defense. Adams so agreed on the advice of his attorney, who indicated that Adams's prior juvenile record, along with the nature and cir-

cumstances of his crime, might lead to a harsher sentence if he was convicted following an extended trial. In addition, in return for Adams's agreeing to a stipulated-facts trial, the state agreed to dismiss two other indictments then pending against him.

Adams repeatedly told his attorney that he wanted to testify. On three separate occasions, however, his attorney explained to Adams that, if he agreed to a stipulated-facts trial, he could testify only at sentencing.

The written stipulation, which tracked the language of the indictment, provided that "the evidence of the State would establish the following facts beyond a reasonable doubt": on September 7, 1981, (1) Adams, without consent, legal authority, or other justification, entered and remained in the residence of one Marylee Donley with the intent to commit the crimes of rape, sodomy, and sexual abuse (Count I); (2) Adams unlawfully and knowingly caused his penis to penetrate Donley's vagina, and at the time of this sexual intercourse, Donley was subjected by Adams to forcible compulsion (Count II); and (3) Adams unlawfully and knowingly caused his penis to contact Donley's anus, and at the time of this deviate sexual intercourse, she was subjected by Adams to forcible compulsion (Count III). Stipulation at 1, *State v. Adams*, No. 10–81–10777 (Or.Cir.Ct., Lane County) (Jan. 18, 1982) [hereinafter "Stipulation"]. The stipulation concluded that "[b]ased on this stipulation, it is the expectation of the parties that the defendant will be found guilty of Count I, Count II, and Count III." *Id.* at 2.

During the stipulated-facts trial, the following colloquy took place between the state trial judge and Adams:

THE COURT: You've discussed your manner of trial with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: You are freely and voluntarily waiving your right to trial by jury?

THE DEFENDANT: Yes.

THE COURT: Election to waive jury will be entered. You're consenting to have this matter tried by stipulated facts?

THE DEFENDANT: Yes, your Honor.

MR. HANSEN [DEFENDANT'S ATTORNEY]: Your Honor, we've both reviewed the stipulation and executed it.

THE COURT: Stipulated facts will be filed with the clerk, and I'll read those over. You may be seated.

All right, I would find the Defendant guilty of Count I, Burglary in the First Degree; Count II, Rape in the First Degree, and Count III, Sodomy in the First Degree.

Transcript of Proceedings, *State v. Adams*, No. 10–81–10777 (Jan. 18, 1982) [hereinafter "Trial Transcript"].

Between conviction and sentencing, Adams gave his attorney a written statement of his version of the assault in which he denied committing the crimes of rape and sodomy. However, Adams told his attorney that he did not want his attorney to withdraw the previously stipulated facts. At the sentencing hearing, the court questioned Adams on the circumstances of the rape. After listening to Adams's testimony, the court imposed the statutory maximum of twenty years of imprisonment for the rape, a consecutive maximum of twenty years for the sodomy, but no additional sentence for the burglary. Adams appealed on the ground that the sentence was excessive. The Oregon Court of Appeals affirmed without opinion. *State v. Adams*, No. A24436 (Or.App. Oct. 13, 1982).

Adams subsequently petitioned for postconviction relief in Oregon state court, contending that his stipulated-facts trial was constitutionally invalid. He argued that he had not voluntarily and intelligently agreed to such a trial. At a hearing on this petition, the following colloquy took place between Adams and his new attorney:

Q Okay did you—did—when did you have discussions with your attorney regarding the stipulated facts trial? When in relationship to when you actually did it?

A Weeks prior to it.

Q Okay what did he tell you that a stipulated facts trial was?

A That I would be waiving my right to a jury and it would be my testimony against the victims [sic]. That I would get up and go to a regular trial without the jury.

Q Did you assume that the judge would make the decision?

A Yes. That I would just go in front of the judge.

Q Did you assume that you would have the right to give testimony on your behalf?

A Yes. Yes I did.

. . . .

Q —so during that stipulated facts trial it kind of came to your attention that this isn't a regular trial?

A Yes.

Q Did you say anything to your attorney about it?

A Well my attorney—I kind of looked at him and he gave me a nod and I guess he knew what he was doing.

Q Okay did you talk with him specifically about it while you were doing it?

A No.

Q Did you simply believe that he had things under control?

A Yes.

. . . .

Q Okay were there any of these charges that you didn't believe you were guilty of?

A Yes.

Q What, if any, of those?

A The rape and sodomy.

Transcript of Proceedings at 6, 8, 11–12, *Adams v. Sullivan*, No. 140,109 (Or.Cir. Ct., Marion County) (Nov. 4, 1983) [hereinafter "Post–Conviction Transcript"]. Adams was thereafter cross-examined by respondent's attorney:

Q Had you completed the eleventh grade prior to this criminal proceeding?

A Yes I did.

Q And you got your GED out at OSCI?

A Yes.

Q Can you read?

A Yes I can.

. . . .

Q All right, let's go a piece at a time then. You were placed in a county jail and an attorney was appointed to represent you, correct?

A Yes.

Q At some time later there was a discussion about entering into a stipulated facts trial, correct?

A Yes.

Q And after that you received a document from your attorney which you have in your hand relating to the stipulated facts that were going to be introduced before the judge, didn't you?

A Yes.

Q And you received that in the county jail, right?

A Yes.

Q And he left it with you so you could read it at your leisure, didn't he?

A Uhm, man—well I'm not sure. I can't say exactly if he did or not. He left me a lot of material so I'm not sure whether to answer yes or no because there was a lot of things that he did leave me.

. . . .

Q All right returning again now to the stipulated facts document on the second page above your signature read that last paragraph out loud to the court, would you please.

A Based on this stipulation it is the expectation of the parties that the defendant will be found guilty of count one and two and count three.

Q What does that mean to you?

A That—that I will be found guilty based on this.

Q And you understood that at that time too, didn't you?

A Yes.

*Id.* at 15, 17, 18.

After the state post-conviction hearing, a state court made the following factual findings: (1) at the stipulated-facts trial Adams understood the written stipulation and that judgment would be based solely upon it; (2) at the stipulated-facts trial Adams un-

derstood that he was waiving all of his statutory and constitutional trial rights; and (3) Adams voluntarily agreed to a trial based on the stipulated facts and voluntarily executed the stipulation. The court therefore denied Adams's petition for post-conviction relief. This ruling was affirmed without opinion by the Oregon Court of Appeals; the Oregon Supreme Court denied review.

Adams then filed the current habeas corpus petition, which the district court dismissed. We have jurisdiction over Adams's timely appeal under 28 U.S.C. § 1291.

## II

### A

■ Adams argues that his stipulation of facts at trial constituted a de facto guilty plea and that he was therefore entitled to the procedural protections attendant to the entering of such a plea. Specifically, he claims that he was entitled to be advised by the judge in open court of his constitutional rights (a) against compulsory self-incrimination, (b) to be tried by a jury, and (c) to confront his accusers, and that the court had a constitutional obligation to establish on the record that he voluntarily and intelligently waived these rights. *See* *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).[1] While we agree that a stipulated-facts proceeding is subject to certain constitutional restrictions, *see infra* Part III, we are not persuaded that the stipulation at issue was a de facto guilty plea.

Adams and the state agreed "that the evidence of the State would establish the [facts in question] beyond a reasonable

doubt." Stipulation at 1. Following the recitation of facts, the stipulation stated, "[b]ased on this stipulation, it is the expectation of the parties that the defendant will be found guilty of Count I, Count II, and Count III." *Id.* at 2.

Adams never stipulated that he was guilty of the crimes of burglary, rape, and sodomy; in fact, Adams pled not guilty to all three counts on which he was convicted by the trial court. Adams only stipulated that the enumerated facts were supported beyond a reasonable doubt by the *evidence* that the state possessed and would present at trial. A stipulation to facts from which a judge or jury may *infer* guilt is simply not the same as a stipulation *to* guilt, or a guilty plea. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin,* 395 U.S. at 242, 89 S.Ct. at 1711. If the *Boykin* Court itself recognized this distinction, then we are hardly in a position to ignore it—or to hold that the full *Boykin* protections extend to the circumstance of a stipulation.[2]

We have previously ruled in analogous circumstances that a defendant in Adams's position is not entitled to the full protections that attend the entry of a guilty plea. In *United States v. Terrack,* 515 F.2d 558 (9th Cir.1975), we considered whether Rule 11 of the Federal Rules of Criminal Procedure, which imposes certain procedural requirements upon a federal court's acceptance of a plea of guilty or nolo contendere, also applies to its acceptance of a stipulation of facts for a criminal trial. *See* Fed. R.Crim.P. 11. We determined that Rule 11

---

1. Adams apparently concedes and the record indisputably reveals that he did voluntarily and intelligently waive his second *"Boykin* right," the constitutional right to a jury trial, after being questioned by the trial judge in open court. The pertinent issue on appeal, therefore, is whether the trial court committed constitutional error in failing to procure voluntary and intelligent waivers of the other two *"Boykin* rights."

2. Nor do the parties' *expectations* change the analysis. An expectation that the trier of fact

will find that the facts as stipulated demonstrate the defendant's guilt does not render the stipulation a de facto guilty plea. When presented with a stipulation of fact, an Oregon trial court is under no statutorily or judicially imposed obligation to find the defendant guilty. *See* *Lyons v. Pearce,* 298 Or. 569, 694 P.2d 978, 980 (1985). The stipulation is only a method for introducing the evidence, and the parties' expectations are only their views on what the trial's outcome will be.

does not apply to stipulations and emphasized that to read Rule 11 otherwise

> would unduly encumber trials now often shortened by stipulation of evidence and [stipulations] to identify exhibits, to specify the chain of custody, and other important matters. To require a Rule 11 examination on every stipulation containing a vital admission of the defendant would add ritualistic formalities where none are needed nor required.... If Rule 11 were to be applied only to stipulations constituting de facto pleas of guilty, when and how is that determination made? Every stipulation of a vital fact is an admission *tending* to establish guilt. Rule 11 specifically applies to pleas of guilty and *nolo contendere* and not to trials. These are areas with a clear division between them. They are either black or white. To create a gray area where stipulations, as a part of a trial, would be governed by the rules on the acceptance of pleas would further complicate the trial judge's duties and push him further into the role of an advocate.

*Terrack*, 515 F.2d at 561 n. 3 (emphasis added); *see also United States v. Schuster*, 734 F.2d 424, 425 (9th Cir.1984) (per curiam) (holding that a plea of not guilty combined with a stipulation of facts sufficient to establish guilt does not constitute a de facto guilty plea and therefore does not implicate the procedural protections of such a plea), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985); *United States v. Miller*, 588 F.2d 1256, 1263–64 (9th Cir.1978) (stipulation that defendant "knowingly, willfully and defiantly committed the illegal acts" charged not a de facto guilty plea), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *United States v. Nixon*, 545 F.2d 1190, 1191 (9th Cir.1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1148, 51 L.Ed.2d 565 (1977); *United States v. Garcia*, 450 F.2d 287, 288 (9th Cir.1971) (per curiam); *accord Lyons v. Pearce*, 298 Or. 569, 694 P.2d 978 (1985) (as a matter of Oregon law).

Several other circuits have also declined to treat inculpatory stipulations of fact as equivalent to guilty pleas for Rule 11 purposes. *See United States v. Robertson*, 698 F.2d 703, 705 (5th Cir.1983) (defendant charged with escape stipulated that he "unlawfully and willfully escaped" from custody at a federal institution); *United States v. Stalder*, 696 F.2d 59, 60 (8th Cir.1982) (defendant stipulated to every fact in the indictment); *Witherspoon v. United States*, 633 F.2d 1247, 1250 (6th Cir.1980) (defendant stipulated to facts including that charged acts were done knowingly), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981); *United States v. Lyons*, 898 F.2d 210, 215 (1st Cir.) (collecting cases), *cert. denied*, —— U.S. ——, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). Only the District of Columbia Circuit apparently disagrees, and that only in dicta. *See United States v. Lawson*, 682 F.2d 1012, 1015 (D.C.Cir.1982) ("Rule 11 inquiries may ... be required if by stipulation or otherwise a defendant has effectively admitted his guilt and waived trial on all issues.").

We recognize that *Terrack* differs from the case before us in two significant respects. First, Adams was convicted in state court, not in federal court; Rule 11, therefore, does not apply here. *See United States v. Newman*, 912 F.2d 1119, 1123 (9th Cir.1990). Second, Adams has challenged the procedural aspects of his convictions on constitutional grounds, not on statutory or rule-based grounds.

Nonetheless, we conclude that the rationale of *Terrack* is equally applicable in the current context and, indeed, is persuasive. The fact that Adams was convicted in a state proceeding rather than a federal proceeding is of no moment; he has brought a federal constitutional challenge, and the level of procedural protection mandated by the federal Constitution for the entry of a stipulation or plea to be valid is certainly no greater in a state forum than it is in a federal forum. *See Henderson v. Morgan*, 426 U.S. 637, 653, 96 S.Ct. 2253, 2261, 49 L.Ed.2d 108 (1976) (Rehnquist, J., dissenting on other grounds).[3]

We are not persuaded that the Rule 11 cases can be distinguished on the basis that

**3.** Indeed, if it has any significance at all, the federal-state distinction seems to weigh against

Rule 11(c), by its terms, applies only to pleas of guilty and nolo contendere. Rule 11(c), as amended in 1974, codifies the constitutional requirements set out in *Boykin*. *See* Fed.R.Crim.P. 11, advisory committee's note on 1974 amendments; *United States v. McWilliams*, 730 F.2d 1218, 1223 (9th Cir.1984). Admittedly, Rule 11 also provides additional protections beyond the minimum required by the Constitution. *See Haase v. United States*, 800 F.2d 123, 127 (7th Cir.1986) (constitutional rights that attend entry of a guilty plea have "more limited scope" than rights conferred by Rule 11); *see also United States v. Sherman*, 474 F.2d 303, 307 (9th Cir.1973) (Hufstedler, J., dissenting on other grounds) ("When compliance with Rule 11 is not in issue because the plea is taken in state court … the validity of the plea rests on compliance with the less rigorous demands of due process."). Nonetheless, the dispute in most of the Rule 11 cases, including *Terrack, see* 515 F.2d at 562–63 (Ely, J., dissenting) and *Schuster, see* 734 F.2d at 425, was over the due process requirements incorporated into Rule 11, not over the additional protections included in the Rule. Indeed, unless based on the assumption that due process is satisfied by a determination that the stipulation has been entered into voluntarily and knowingly, the *Terrack* line of cases would make little sense even in the federal realm: what Rule 11 requires would be largely irrelevant—and hardly worthy of analysis—if the dictates of due process required more.

In short, we hold that Adams was not entitled to the full constitutional protections that apply to the tendering of a guilty plea.[4] To the extent that *Quiroz v. Wawrzaszek*, 749 F.2d 1375 (9th Cir.1984), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2119, 85 L.Ed.2d 483 (1985), is inconsistent with this holding, it is hereby overruled.

### B

In determining that the parties' stipulation did not constitute a guilty plea, we

appellant's position. *Terrack* involved the direct appeal of a federal conviction; the present case, on the other hand, involves the collateral review of state convictions—which have already been collaterally reviewed and thereafter validated by the state judicial system. In a similar context, another court has explained:

> The standard of review in a collateral attack upon a guilty plea [under 28 U.S.C. § 2255] is entirely different from that on a direct appeal. In collateral proceedings the courts have held that a conviction will be vacated for a Rule 11 violation only if it amounts to "a fundamental defect which inherently results in a complete miscarriage of justice (citations omitted)." *Carreon v. United States*, 578 F.2d 176, 179 (7th Cir.1978).... On direct appeal, the rule generally applied is that "any noncompliance with Rule 11 is reversible error." *McCarthy v. United States*, 394 U.S. 459, 464 n. 9, 89 S.Ct. 1166, 1170 n. 9, 22 L.Ed.2d 418 (1969).... *United States v. Fels*, 599 F.2d 142, 149 n. 5 (7th Cir.1979) (per curiam); *see also Haase v. United States*, 800 F.2d 123, 127 (7th Cir.1986) (collateral Rule 11 challenges under section 2255 are reviewed under a more deferential standard than direct Rule 11 challenges).

If a more deferential standard applies to the collateral review of a federal guilty plea than applies to the direct review of that same plea, then certainly an even more deferential standard must apply when, as here, the court collaterally reviews what is alleged to be a *state* guilty plea. Comity, respect for the state's own procedural rules, and respect for the state's sovereign interest in the administration of its own criminal justice system pose an additional reason for deference that is wholly absent from the purely federal context.

**4.** We recognize that this circuit, along with two others, has held that an admission of prior convictions which subject a defendant to an enhanced sentence under a multiple offender statute is the functional equivalent of a guilty plea to a separate charge. *Wright v. Craven*, 461 F.2d 1109 (9th Cir.1972), *aff'g* 325 F.Supp. 1253 (N.D.Cal.1971); *see also Virgin Islands v. George*, 741 F.2d 643, 648–49 (3d Cir.1984); *Cox v. Hutto*, 589 F.2d 394, 396 (8th Cir.1979); *contra Joseph v. Butler*, 838 F.2d 786, 790–91 (5th Cir. 1988). *Wright* is not inconsistent with the rule we adopt here. We had no occasion in that case to consider the applicability of *Boykin*, because the defendant's trial had preceded the *Boykin* decision. We agreed with the district court that the admission of prior convictions could "not be accepted unless the defendant underst[ood] the consequences of the admission." 461 F.2d at 1109. The Eighth Circuit later construed *Wright* to require only that the court determine "whether [the defendant] knowingly and voluntarily agreed to the stipulation," *Cox v. Hutto*, 589 F.2d 394, 396 (8th Cir.1979), citing our decision in *Terrack*. We agree with this interpretation. Admissions of prior convictions which may subject a defendant to enhanced penalties under a recidivist statute must satisfy the test of voluntariness we set out for stipulations, *infra* Part III.

consider the purposes of the defendant and his counsel in choosing this method of presenting evidence to the trier of fact. The affidavit of Adams's trial counsel, submitted during the Oregon post-conviction proceeding and refiled as an exhibit to the state's motion for summary judgment below, explained the defense's thinking as follows:

> The evidence against Mr. Adamas [sic] was fairly overwhelming. It included bite marks on the victim's body that were matched by plaster molds and experts from California to Mr. Adams'[s] own teeth. These bites were in places that were incosistent [sic] with Mr. Adams'[s] description of how things occurred.
>
> \* \* \* \* \* \*
>
> Mr. Adams did express to me repeatedly that his preference and desire would be to take the stand and make his own statement to the judge. It was the State's position that if there was going to be any testimony by the defendant, they would want to have a complete full trial. If there was going to be a trial, then there was no need for them to dismiss the other charges that were currently pending against Mr. Adams, charges that they would insist on pursuing and requesting the maximum [penalty for]. His prior juvenile record made it seem imminently [sic] reasonable that consecutive sentences might well be in order.
>
> \* \* \* \* \* \*
>
> I had the stipulation put in writing specifically to avoid a lengthy and inflammatory recitation of the facts by the District Attorney. Mr. Adams signed the stipulation in open court.

Affidavit of R. Chris Hansen at 2, 3–4, *Adams v. Sullivan*, No. 140,109 (Sept. 1, 1983) [hereinafter "Affidavit"].

In the defense's own understanding, therefore, Adams clearly did not plead guilty; he professed his innocence and pursued a trial strategy designed to avert what his attorney perceived to be potentially more damaging and perhaps prejudicial: a full-scale recitation of the evidence before the judge or jury. Perhaps wisely, the defense viewed the stipulation as (a) the most effective and least inflammatory method for presenting the facts to the trial court and (b) the most effective means of foreclosing any effort by the state to prosecute Adams to the full extent of the law. Indeed, Adams himself has admitted that a prime motivation for his agreeing to the stipulation was to have two indictments pending against him dropped. Under such circumstances—where the defense itself does not intend its actions to be construed as an admission of guilt and where it has strategic reasons to support its decision to stipulate—it would be curious indeed for the trial court to hold that the parties' stipulation does constitute a plea of guilty.

■ From our vantage point, it may appear to us (and clearly it now appears to Adams) that the defense made an unfortunate choice. Although the stipulation prevented an "inflammatory recitation of the facts," the trial judge nevertheless sentenced Adams to the maximum period of incarceration. We decline to adopt a rule, however, that would require a state trial judge to inquire in every instance into the motive behind a stipulation, and the likelihood that the strategy pursued will succeed. There may be a variety of strategic reasons for proceeding by a stipulated facts trial, ranging from preservation of issues for appeal to attempting to mitigate the sentence by a partial acceptance of responsibility or by controlling the evidence presented to the sentencer. *See United States v. Lyons*, 898 F.2d 210, 214 n. 5 (1st Cir.1990). We decline, as well, to adopt a rule applying *Boykin* to those stipulations which appear, to a federal court later presented with a habeas petition, ill-considered. We hold, instead, that a plea of not guilty in combination with a stipulated facts trial is simply not equivalent to a guilty plea for *Boykin* purposes, even if the stipulation is to all elements necessary to a conviction and even if it might appear to a reviewing court that the stipulation serves little purpose.[5]

---

5. Unlike our dissenting colleagues, we do not believe our holding invites prosecutorial abuse.

### III

■ Having determined that the stipulation was not a de facto guilty plea and that Adams was therefore not entitled to the full measure of protection that attends such a plea, we must now determine what due process protections *are* required for the present stipulation and convictions to be valid. The answer here is clear and mandated by our prior decisions: Adams's convictions are valid only if he voluntarily and knowingly agreed to the stipulation. *See United States v. Ferreira–Alameda,* 815 F.2d 1251, 1253 (9th Cir.1986); *Schuster,* 734 F.2d at 426; *Miller,* 588 F.2d at 1264; *Garcia,* 450 F.2d at 288. Reviewing de novo the district court's denial of Adams's petition for habeas relief, *see Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985), we address first the voluntariness of Adams's stipulation, and then whether it was knowing.

### A

■ Adams claims that his agreement to a stipulated-facts trial was involuntary. The state court that heard Adams's post-conviction petition found otherwise:

3. Petitioner voluntarily agreed to a trial based on stipulated facts and voluntarily executed the stipulation setting forth the facts on which he was tried.

Findings of Fact, Conclusions of Law and Judgment at 2, *Adams v. Sullivan,* No. 140,109 (Jan. 1, 1984) [hereinafter "Findings"]. "Factual findings underlying a court's conclusion of voluntariness are given deference in a habeas proceeding and reviewed for clear error on appeal. Deference is not accorded to a state court's determinations of mixed questions of law and fact or of purely legal questions, and thus the ultimate question of voluntariness is reviewed de novo." *Torrey v. Estelle,* 842 F.2d 234, 235 (9th Cir.1988) (citations omitted).

Upon review of the record, we reject Adams's argument that his agreement to a stipulated-facts trial was involuntary. Adams was faced with an admittedly difficult choice. He could proceed to an extended trial on the merits, replete with witnesses and potentially damning evidence, or he could agree to a stipulated-facts trial and receive a dismissal of two other indictments pending against him. As his attorney indicated, he chose to proceed to trial by stipulated facts because, after consultation with his attorney, he determined that the benefits outweighed the costs. Indeed, the defense decided to have the facts "put in writing specifically to avoid a lengthy and inflammatory recitation of the facts." Affidavit at 3–4. Furthermore, Adams indicated to the trial judge that his attorney had discussed the manner of trial with him:

THE COURT: You've discussed your manner of trial with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: You are freely and voluntarily waiving your right to trial by jury?

THE DEFENDANT: Yes.

THE COURT: Election to waive jury will be entered. You're consenting to have this matter tried by stipulated facts?

THE DEFENDANT: Yes, your Honor.

Trial Transcript at 2. The record indicates that, rather than being coerced, Adams weighed the costs and benefits of the stipulated-facts trial procedure and made a rational decision to pursue that route.

In short, we reject Adams's argument that his actions at trial were involuntary and accept the Oregon state court's determination that he "voluntarily agreed to a trial based on stipulated facts and voluntarily executed the stipulation setting forth the facts on which he was tried."

### B

■ Adams next argues that he did not act intelligently in agreeing to a stipu-

Prosecutors simply do not control the information available to a defendant in these circumstances. First, as we hold in Part III, a stipulation is valid only if knowingly entered. Second, defense counsel of course has an obligation to inform the defendant fully of the consequences of either a plea or a stipulation. And third, no prosecutor can prevent the trial judge from going through the *Boykin* litany. We hold only that, in the case of a stipulated facts trial, the federal constitution does not mandate a *Boykin* examination.

lated-facts trial. A stipulation is valid and binding if the defendant understands the contents of the stipulation, the nature of the stipulated-facts trial, and the likelihood of a guilty finding. The state post-conviction court found that Adams's stipulation met this test, entering the following finding:

1. At the time of petitioner's trial on stipulated facts, petitioner understood the facts set forth in the written stipulation presented to the court; petitioner understood that the court would determine petitioner's guilt or innocence solely on the basis of such stipulated facts; and petitioner understood that it was expected that the court would find petitioner guilty on the basis of such stipulated facts.

Findings at 2. The state court's findings on this issue are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). *Derrick v. Peterson,* 924 F.2d 813, 823 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 161, 116 L.Ed.2d 126 (1991).

Here again, the record amply supports the state court's conclusion that Adams's action was a "knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Indeed, Adams testified at his post-conviction hearing that he was aware at trial of the consequences of the stipulation:

Q All right returning again now to the stipulated facts document on the second page above your signature read that last paragraph out loud to the court, would you please.

A Based on this stipulation it is the expectation of the parties that the defendant will be found guilty of count one and two and count three.

Q What does that mean to you?

A That—that I will be found guilty based on this.

Q *And you understood that at that time too, didn't you?*

A *Yes.*

Post–Conviction Transcript at 18 (emphasis added). Adams's trial attorney also submitted evidence to the state court which rejected Adams's post-conviction argument that his plea had not been voluntary or intelligent. His affidavit reads in part as follows:

After reviewing the files, I do recall fairly clearly the circumstances surrounding the stipulated facts trial. The evidence against Mr. Adamas [sic] was fairly overwhelming. It included bite marks on the victim's body that were matched by plaster molds and experts from California to Mr. Adams'[s] own teeth. These bites were in places that were incosistent [sic] with Mr. Adams'[s] description of how things occurred. Mr. Adams did present me with a written statement as to his version of the assault on Ms. Donley.... This statement was presented, incidentally, after the stipulated facts trial took place and prior to sentencing. I asked Mr. Adams at that time whether he wanted to attempt to withdraw the stipulated facts trial when I received this written statement, and he said he did not want to do that.

Prior to the trial date, I had discussed with Mr. Adams, on at least two separate occasions, the effect and impact of the stipulated facts trial. I did so because Mr. Adams, while fairly intelligent, was unsophisticated in the more arcane aspects of the criminal law, including the meanings of a stipulated facts trial. Mr. Adams did express to me repeatedly that his preference and desire would be to take the stand and make his own statement to the judge.... I explained to him on at least two separate occasions and then again on the morning that we actually went before Judge Beckett with the stipulation, that any statement he would make to the Court would have to be at sentencing and would not be at the stipulated facts trial. *I tried to do this in as non-technical a fashion as possible, and I clearly recall that Mr. Adams understood what I was telling him and that, albeit reluctantly, he would agree.*

On January 18, 1982, we went before Judge Beckett with the stipulation. The stipulation was in writing, and Mr. Adams had a chance to read it in advance and I explained the words to him. I had the stipulation put in writing specifically to avoid a lengthy and inflammatory recitation of the facts by the District Attorney. Mr. Adams signed the stipulation in open court.

Affidavit at 2–4 (emphasis added). This further supports the state court's conclusion that Adams acted knowingly in agreeing to a stipulated-facts trial.

In short, given Adams's own testimony at his post-conviction hearing and the other evidence in the record, we hold that Adams has failed to overcome the presumption of correctness accorded to the state court's finding that he understood the nature and consequences of his agreement to a stipulated-facts trial. We therefore reject his claim that he acted unknowingly.[6]

### IV

Adams, a relatively educated young man, wanted the benefits of a stipulated-facts trial: a hoped-for lighter sentence, the dismissal of two other indictments pending against him, and the avoidance of a drawn-out presentation of the facts. He also wanted the benefits of a more elaborate trial, including the opportunity to testify in his own behalf. Faced with a mutually exclusive choice between these two options, he chose a stipulated-facts trial. Because his choice was voluntary and intelligent, we must affirm the district court's dismissal of his petition for a writ of habeas corpus.

AFFIRMED.

KOZINSKI, Circuit Judge, concurring.

While I join the majority opinion, I find this case much closer than either the majority or the dissent acknowledges. On the one hand, Adams never entered a formal guilty plea. Majority at 839. On the other, Adams did just about everything else to assure his conviction. Dissent at 848. Should Adams have to go through the formality of a guilty plea in order to be entitled to the procedure specified in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)?

The answer to this question turns on whether one reads *Boykin* as embodying the requirements of due process or as merely announcing a prophylactic rule— one that can be violated without necessarily violating the Constitution. If *Boykin* embodies constitutional requirements, it cannot be circumvented by structuring a guilty plea so as to avoid using the phrase "I plead guilty"; if it is a prophylactic rule, however, procedural niceties can matter a great deal.

While the point certainly is debatable, I conclude that *Boykin* created a prophylactic rule. One indication of this comes from juxtaposing *Boykin* with *Halliday v. United States*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), decided less than a month earlier. *See Boykin*, 395 U.S. at 247–48, 89 S.Ct. at 1714–15 (Harlan, J., dissenting). *Boykin* drew support for its holding that a court must establish a defendant's voluntary waiver of certain constitutional rights on the record before it can accept a guilty plea from *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). But in *Halliday*, the Court explained that the rule announced in *McCarthy* "was based solely upon the application of [former] Rule 11 and not upon constitutional grounds." 394 U.S. at 832, 89 S.Ct. at 1499. Instead of reflecting due process norms, the *McCarthy* rule was "designed to facilitate the determination of . . . voluntariness" and "a more expeditious disposition of a post-conviction attack on the plea." *Id.*

6. Even if we were to hold that *Boykin* applied to this stipulation, we would not grant Adams's petition. The state court findings following the post-conviction hearing demonstrate that Adams voluntarily and intelligently agreed to waive his *Boykin* rights. *See* Findings at 2 ("At the time of petitioner's trial on stipulated facts, petitioner understood that by proceeding in such manner he would be giving up all of his statutory and constitutional trial rights, including, but not limited to, the right to testify and to confront and cross-examine witnesses produced against him.).”

The reasoning employed in *Boykin* also indicates that its rule is prophylactic. Like *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *Boykin* concentrates on providing additional, bright-line protection for enumerated constitutional guarantees—namely, the rights to trial by jury, to confront one's accusers and to be free from compulsory self-incrimination—and thereby travels one step beyond the specific requirements of the Constitution. 395 U.S. at 243, 89 S.Ct. at 1712. Its emphasis is "on assuring that constitutional protections are honored, on assuring not just the vindication of constitutional rights but also the appearance of vindication." Grano, *Prophylactic Rules in Criminal Procedure: A Question of Article III Legitimacy*, 80 Nw.U.L.Rev. 100, 105 (1985).

Finally, it is difficult to conclude that due process requires an on-the-record recitation of a defendant's rights before his guilty plea can ever be accepted. If a defendant is *in fact* aware of his rights because they were explained to him by his attorney or by the judge off the record, or because he knew and understood them by virtue of his own legal training or experience, due process would seem to be satisfied.[1] The on-the-record recitation serves only to avoid uncertainty regarding what the defendant knows so as to assist a reviewing court's determination of whether his waiver was voluntary and intelligent. This is the quintessential rationale for a prophylactic rule.[2]

Having concluded that *Boykin* established a prophylactic rule, I concur in the majority's conclusion that a formal guilty plea is necessary to trigger the rule's protections. This is more a concession to reality than a statement about how crucial a particular event may be in the life of a criminal case. Criminal prosecutions put a variety of facts at issue, but quite often only a few are genuinely in dispute. Stipulating to any one of those facts—or agreeing to any procedural shortcut, for that matter—can fairly be characterized as giving up the defendant's substantial rights, perhaps even as tantamount to a guilty plea.

With the benefit of hindsight, a tactical concession might well look like a major turning point in the case, one which made the outcome a foregone conclusion. Yet it would be entirely unworkable to demand a *Boykin* inquiry every time the defense and prosecution come to some arrangement—through stipulation, concession or whatever—that narrows the issues for trial. While the concession in Adams's case was just about as broad as one could imagine, I find it impossible to draw a crisp line between Adams's stipulation and a much narrower one that still gives up key facts. What, for example, if Adams had conceded the relevant physical facts, i.e., that he had intercourse with the victim, but had disputed intent? Or, conversely, what if he had conceded intent but challenged some of the physical facts?

Whether one or both of these concessions would be viewed as critical—as a "de facto" guilty plea—turns on what was genuinely in dispute in light of the evidence available to the prosecutor. Determining whether *Boykin* is implicated outside the safe confines of the express guilty plea would obligate federal courts to reverse-engineer every criminal case where the defense makes any sort of nontrivial concession. I seriously doubt that is a burden the *Boykin* Court meant to create or the result it had in mind.

Because prophylactic rules such as *Boykin* are intended "to minimize the sum of error costs and administrative costs" of

---

1. See, for example, *Marshall v. Lonberger*, 459 U.S. 422, 436–37, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983), and *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 2258–59, 49 L.Ed.2d 108 (1976), which hold that although due process dictates that a defendant know of the nature of the charges against him before he pleads guilty, this knowledge need not be exhaustively reflected in the record.

2. Whether "[t]his faith in procedural choreography" is warranted is an open question. *United States v. Balough*, 820 F.2d 1485, 1491 (9th Cir. 1987) (Kozinski, J., joined by Hall, J., concurring).

criminal trials,[3] applying *Boykin* to concessions that are less than formal pleas of guilt would, in my judgment, be counterproductive and eventually lead to abandonment of the rule. Requiring a formal guilty plea as the trigger for a *Boykin* inquiry gives the rule a workable scope and focuses the attention of the court, the counsel and the defendant on *the* most serious waiver of rights in a criminal trial: a defendant's formal acceptance of guilt.

To say that *Boykin*'s prophylactic rule does not apply, of course, leaves unchanged the need for compliance with the basic requirement of due process, namely that Adams voluntarily and intelligently agree to the stipulation that formed the basis of his conviction.[4] Because I agree with the majority that this requirement was satisfied, I join its opinion.

TANG, Circuit Judge, dissenting, joined by Judges PREGERSON and NORRIS:

I wholeheartedly agree with Judge Pregerson's discussion of the flaws in the majority's analysis of Adams' claim. The nature of the stipulation in this case belies the majority's assertion that the judge merely inferred guilt. The stipulation established both facts and unavoidable legal conclusions. The stipulation admitted of no contrary inferences. The finding of guilt was ineluctable. While a strong argument can be made that *Boykin* does not apply when a stipulation permits conflicting inferences or alternative legal conclusions, that is not this case. Just like the guilty plea in *Boykin*, this stipulation was more than an admission that Adams committed various acts. "[I]t is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). To adopt the majority's distinction is to engage in legalistic hair-splitting, and to exalt form over substance at the expense of constitutional rights.

I write separately simply to express my deep regret and frustration over the majority's and concurrence's talismanic devotion to "bright-line" rules. Bright lines are best left to computer programs and engineers' blueprints. As tools of constitutional interpretation, they leave much to be desired. The Bill of Rights is a proud enunciation of enduring principles governing the relation between individuals and the government they created. It demeans our constitutional heritage to reduce the Bill of Rights to a formalistic matrix of bright-line rules, where deducing the answer to complex conflicts between the rights of the person and the needs of the state is as simple as turning a light switch on or off.

Moreover, the majority's insistence that only the label "Guilty Plea" at the top of a piece of paper can trigger *Boykin*'s constitutional protections abdicates to attorneys the judiciary's traditional responsibility for determining what constitutional protections a criminal defendant enjoys. While an agreement may look like a guilty plea, sound like a guilty plea, smell like a guilty plea, and have the same practical effect as a guilty plea, judges of this court must now turn a blind eye to reality and defer to the characterization of the document imposed by the attorneys. Admittedly, the majority's approach makes our job as judges much easier. But it does so at the expense of those individuals subject to government's most awesome and frightening power to imprison and to sentence to death.

In sum, I cannot subscribe to the majority's resolution of this case. I believe, like Judge Pregerson, that the same concerns animating the Supreme Court in *Boykin* obtain in the case of stipulated fact trials where the facts admit of only one verdict. To draw the line that the majority proposes will exalt form over substance and hinge constitutional rights on the labels employed by attorneys. More importantly, limiting *Boykin* to de jure, and not de facto, guilty

**3.** Strauss, *The Ubiquity of Prophylactic Rules*, 55 U.Chi.L.Rev. 190, 193 (1988).

**4.** Because *Boykin* does not apply, there is no need to address the proper standard of habeas

review for claims based on prophylactic rules. *See Williams v. Withrow*, 944 F.2d 284, 291 (6th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1664, 118 L.Ed.2d 386 (1992).

pleas will invite abuse by prosecutors. Stipulated fact trials could be employed by prosecutors to evade the constitutional protections afforded defendants who plead guilty outright. Alas, the outcome will be the same—a guaranteed guilty verdict. Only the rights of the defendants will be changed.

I dissent.

PREGERSON, Circuit Judge, dissenting, joined by Judges TANG and NORRIS:

Adams signed a stipulation admitting the existence beyond a reasonable doubt of every element of the charged offenses. In my view, this is tantamount to a guilty plea. We took this case en banc to decide whether Adams is entitled to the same constitutional protections accorded defendants who plead guilty. The majority concludes wrongly that Adams was not entitled to these protections.

I cannot imagine what more Adams could have done to acknowledge his guilt short of uttering, "I plead guilty." Adams's stipulation tracked the words of the indictment identically. He stated that "[w]ith respect to Count II of the indictment charging Rape in the First Degree, the defendant ... did unlawfully and knowingly cause his penis to penetrate the vagina of Marylee Donley, a female, and at the time of his sexual intercourse, Marylee Donley was subjected to forcible compulsion by the defendant." Adams's admissions of guilt to the burglary and sodomy charges were equally comprehensive.

Adams's stipulation also revealed his intent, a fact uniquely within his own knowledge. Adams stated that "the defendant, without consent, legal authority, or other justification, entered and remained in the residence of Marylee Donley located at 725 East 44th Street, Eugene, Oregon, and, further, that at the time of the entering and remaining, the defendant had the intent to commit the crimes of rape, sodomy, and sexual abuse."

Moreover, Adams did not challenge or intend to challenge any of the government's evidence. Instead, he agreed that "[b]ased on this stipulation, it is the expectation of the parties that the defendant will be found guilty of Count I, Count II, and Count III." Adams fully expected to be found guilty of each charge on the basis of his stipulation.[1]

The trial court had no rational choice but to convict Adams of each offense. The judge accepted the stipulation and summarily pronounced Adams guilty: "Stipulated facts will be filed with the clerk, and I'll read those over. You may be seated. All right, I would find the Defendant guilty of Count I, Burglary in the First Degree, Count II, Rape in the First Degree, and Count III, Sodomy in the First Degree."

Adams's stipulation resulted inexorably in his conviction just as surely as if he pled guilty. By stipulating to each element of the charged offenses, Adams effectively waived every constitutional privilege and right he would have waived had he pled guilty—including the privilege against self-incrimination, the right to confront one's accusers, and the right to be heard by a jury of one's peers. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

To satisfy due process, waiver of a constitutional right must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Longstanding Supreme Court precedent holds that a defendant's waiver of constitutional rights in criminal proceedings must be made in open court and on the record. In *Boykin*, the Court held that "[w]e cannot presume a waiver of these ... important federal rights from a silent record." *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712.

The majority holds that waiver on the record is not required when the accused enters into a stipulation so comprehensive that nothing remains but to pronounce guilt. The majority's holding undermines *Boykin*'s admonition that waiver will not be presumed from a silent record.

---

1. The stipulation is attached as an appendix.

In *Boykin,* the Supreme Court stated that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin,* 395 U.S. at 242, 89 S.Ct. at 1711–12. The majority believes this language, which contrasts guilty pleas with confessions, indicates that *Boykin* distinguished between formal and de facto guilty pleas.

*Boykin* makes no such distinction. According to *Boykin,* a guilty plea is not characterized by formal words, but by whether "nothing remains but to give judgment and determine punishment." *Id.*

In *Boykin,* the Supreme Court characterized a guilty plea as "more than a voluntary confession made in open court.... [A guilty plea] serves as a *stipulation* that no proof by the prosecution need be advanced.... It supplies both evidence and verdict, ending controversy." *Boykin,* 395 U.S. at 242 n. 4, 89 S.Ct. at 1712 n. 4 (emphasis added) (quoting *Woodard v. State,* 42 Ala.App. 552, 558, 171 So.2d 462, 469 (1965)).

This characterization applies completely to Adams's case. Nothing remained for the trial court other than to find Adams guilty as charged, and pronounce sentence. No further evidence was needed. Adams's stipulation provided both the evidence and the verdict, and effectively ended the controversy. In these circumstances, I believe the trial court was required to ascertain on the record that Adams understood that by entering a stipulation tantamount to a guilty plea, he was in effect waiving his *Boykin* rights. *Cf. United States v. Terrack,* 515 F.2d 558, 562 (9th Cir.1975) (Ely, Circuit Judge, dissenting) (The *"stipulation* to the prosecution's entire case was, exactly like a guilty plea, a stipulation that no proof by the prosecutor was necessary. Once the stipulation was made, the controversy was effectively terminated, and accordingly, the trial judge summarily made his judgment of conviction. Thus, [the] stipulation contained the basic characteristics that, under Supreme Court doctrine, delineate a plea of guilty. This being true,

all incidents to the acceptance of a plea of guilty should attach.").

Stressing judicial economy, the majority opinion holds that waiver on the record is not necessary for the trial court to accept a de facto guilty plea. The majority draws a tidy bright line between the defendant who formally pleads guilty (or nolo contendere) and the defendant who does not. If the defendant offers a guilty plea the trial court must ensure that the defendant knowingly and intelligently waives his constitutional rights. If the defendant does not formally plead guilty, the opinion concludes that the trial court need make no inquiry into the defendant's waiver of constitutional rights.

According to the majority, "these are areas with a clear division between them. They are either black or white. To create a gray area where stipulations, as a part of trial, would be governed by the rules on the acceptance of pleas would further complicate the trial judge's duties and push him further into the role of an advocate." *Ante* at 840 (quoting *Terrack,* 515 F.2d at 561 n. 3). I reject the notion that following *Boykin's* rules on the acceptance of pleas would complicate the trial judge's job, or that efforts to preserve and respect accused's constitutional rights turn judges into advocates.

In this case, the trial judge could have ascertained within a few minutes whether Adams clearly understood that he was giving up important constitutional rights, including the right to testify on his own behalf, the right to confront his accusers, and the right to a jury trial. By spending a few more minutes with Adams, the trial judge could have ensured that Adams waived those constitutional rights knowingly and intelligently, and several appellate courts would have been spared countless hours of work.

*Boykin* teaches that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin,*

395 U.S. at 243–44, 89 S.Ct. at 1712. The exercise of "utmost solicitude" by trial judges in criminal matters ensures that our constitutional rights are preserved and respected. Because that was not done here, I dissent.

### APPENDIX

#### Stipulation of David Adams

COMES NOW the parties in the above case, the defendant in person by and through his attorney, Robert C. Hansen, and the State of Oregon by and through Joseph Martin Kosydar, Assistant District Attorney for Lane County, and enter into the following stipulation.

That the evidence of the State would establish the following facts beyond a reasonable doubt:

(1) That the events described in this stipulation occurred on September 7, 1981 in Lane County, Oregon;

(2) With respect to Count I of the indictment charging Burglary in the First Degree, the defendant, without consent, legal authority, or other justification, entered and remained in the residence of Marylee Donley located at 725 East 44th Street, Eugene, Oregon, and, further, that at the time of the entering and remaining, the defendant had the intent to commit the crimes of rape, sodomy, and sexual abuse;

(3) With respect to Count II of the indictment charging Rape in the First Degree, the defendant at the time described in number (1) above, did unlawfully and knowingly cause his penis to penetrate the vagina of Marylee Donley, a female, and at the time of his sexual intercourse, Marylee Donley was subjected to forcible compulsion by the defendant;

(4) With respect to Count III of the indictment charging Sodomy in the First Degree, the defendant at the time described in number (1) above, did unlawfully and knowingly cause his penis to contact the anus of Marylee Donley, a female, and at the time of this deviate sexual intercourse, Marylee Donley was subjected to forcible compulsion by the defendant.

Based on this stipulation, it is the expectation of the parties that the defendant will be found guilty of Count I, Count II, and Count III.