19 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel Contreras JACQUEZ, Petitioner-Appellee,
v.
James ROWLAND, Respondent-Appellant.
 No. 93-16920.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 14, 1994.*
Decided Feb. 28, 1994.
 
 1
 Before: SCHROEDER, NOONAN, Circuit Judges, and JONES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Respondent appeals the district court's decision to grant Daniel Contreras Jacquez' petition for writ of habeas corpus. The district court granted Jacquez' petition on the grounds that the state trial court violated Jacquez' due process rights when it erroneously instructed the jury on voluntary manslaughter and failed to sua sponte instruct the jury on involuntary manslaughter. We reverse.
 
 
 4
 On January 9, 1987, Daniel Contreras Jacquez was charged with murder and use of a deadly weapon in the course of that offense, in violation of California Penal Code sections 187 and 12022(b). At his jury trial, Jacquez introduced evidence that he was voluntarily intoxicated at the time the victim was killed. The trial testimony conflicted on the extent of his intoxication.
 
 
 5
 The trial court instructed the jury on voluntary manslaughter and the effect of voluntary intoxication on the mens rea element of the charged offenses, as follows:
 
 
 6
 Voluntary manslaughter is the intentional and unlawful killing of a human being without malice aforethought. There is no malice aforethought if the evidence shows that due to intoxication the Defendant did not have the capacity to form the mental state constituting malice aforethought, even though the killing was intentional, voluntary, deliberated, premeditated and unprovoked.
 
 
 7
 The distinction between murder and manslaughter is that murder requires malice while manslaughter does not.
 
 
 8
 When the act causing death, though unlawful, is done without the capacity to form the mental state constituting malice aforethought due to intoxication, the offense is manslaughter. In such a case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent.
 
 
 9
 Jacquez convinced the district court that this instruction is not only contrary to California law, but also that the trial court violated his due process rights by giving it.
 
 
 10
 In addition to the voluntary manslaughter instruction, the jury was instructed on first degree murder, second degree murder, and attempted rape. No instruction was requested or given on involuntary manslaughter. The district court agreed with Jacquez' contention that the trial court's failure to instruct sua sponte on involuntary manslaughter also violated Jacquez' due process rights.
 
 
 11
 On February 21, 1991, Jacquez filed an amended application for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254, alleging five grounds for relief: (1) that he received ineffective assistance of counsel at a suppression hearing; (2) that the trial court violated his due process rights by erroneously instructing the jury on voluntary manslaughter; (3) that he was denied due process of law by the trial court's failure to instruct on involuntary manslaughter; (4) that he was denied effective assistance of counsel by his attorney's submission of an erroneous voluntary manslaughter instruction; and (5) that he was denied due process of law and effective assistance of counsel by his attorney's failure to seek a jury instruction on involuntary manslaughter. Against the recommendation of the magistrate judge, the district court granted the petition on the second and third grounds, without reaching the remaining three.[1]
 
 STANDARDS OF REVIEW
 
 12
 A district court's decision to grant or deny habeas corpus relief is reviewed de novo. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 
 13
 We do not review for errors of state law, but only constitutional error. Estelle v. McGuire, --- U.S. ----, ----, 112 S.Ct. 475, 480 (1991). In McGuire, the Supreme Court made clear that an inquiry into state law is entirely inappropriate in conducting habeas review:
 
 
 14
 In ruling that McGuire's due process rights were violated by the admission of the evidence, the Court of Appeals relied in part on its conclusion that the evidence was "incorrectly admitted ... pursuant to California law." ... Such an inquiry, however, is no part of a federal court's habeas review of a state conviction. We have stated many times that "federal habeas corpus relief does not lie for errors of state law." ... Today, we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States....
 
 
 15
 Id. at 479-80 (citations omitted). Alleged instructional errors are reviewed solely to determine
 
 
 16
 "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." ... It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.... In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.... And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." ... "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." ...
 
 
 17
 Id. at 482 (citations omitted).
 
 DISCUSSION
 
 18
 Initially, appellant argues that the district court should not have addressed the issue of whether the trial court erred in instructing the jury on voluntary manslaughter in any form. According to appellant, Jacquez has never claimed, in either state or federal court, that no voluntary manslaughter instruction should have been given; only that the particular instruction given was improper.
 
 
 19
 To the contrary, Jacquez adequately raised the issue in his amended petition, where he alleged:
 
 
 20
 The confusing and inadequate instructions on voluntary manslaughter denied petitioner due process and were prejudicial error because the degree of intoxication proved at trial was so substantial as to support a reasonable doubt that petitioner had the capacity to form the intent to kill, or actually had such intent at the time of the homicide.
 
 
 21
 Under the 1981 amendments to California law, these allegations must be read to challenge the propriety of giving any voluntary manslaughter instruction in this case.
 
 
 22
 This court need not examine whether Jacquez raised this issue in state court. Because respondent failed to raise the defense of failure to exhaust state remedies in the district court, it was waived. Brown v. Maass, --- F.3d ----, ----, No. 92-36906 (9th Cir. Dec. 10, 1993).
 
 
 23
 Turning to the merits of Jacquez' claims, it is his contention that the trial court committed two errors of state law which resulted in actual prejudice in violation of his due process rights.
 
 
 24
 First, Jacquez argues that the trial court committed both state law and constitutional error by giving the diminished capacity/voluntary manslaughter instruction. In 1981, California law was amended to abolish the defense of diminished capacity. Cal.Pen.Code Secs. 25(a), 28(b). "[T]he concept of 'diminished capacity voluntary manslaughter' ... is no longer valid as a defense" in California. People v. Saille, 54 Cal.3d 1103, 1114 (1991).
 
 
 25
 However, it is not enough for Jacquez to show that a diminished capacity/voluntary manslaughter instruction violates state law; there is no due process right to correctness of jury instructions under state law. He must also show that the instruction so infected the trial that his due process rights were violated.
 
 
 26
 Because we must review the diminished capacity/voluntary manslaughter instruction in the context of the entire trial, we turn first to Jacquez' claim that the trial court was required to give an involuntary manslaughter instruction sua sponte.
 
 
 27
 California law requires a trial court to instruct sua sponte on a lesser included offense "if the defendant proffers evidence enough to deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable men could have concluded' that ... the requisite criminal intent" was not present for the charged offense. People v. Ramirez, 50 Cal.3d 1158, 1180 (1990), cert. denied, 498 U.S. 1110 (1991) (quoting People v. Flannel, 25 Cal.3d 668, 684 (1979)). The court has no duty to instruct sua sponte on a lesser offense, however, if it appears that the defendant is not relying on the defense or if the defense is inconsistent with the defendant's theory of the case. People v. Sedeno, 10 Cal.3d 703, 716 (1974).
 
 
 28
 In this case, there was conflicting evidence of Jacquez' level of intoxication. However, Jacquez did not rely on the "defense" of voluntary intoxication at trial. His defense was that someone else did the killing. He blamed some unidentified black man as the culprit to the police immediately after the killing and persisted in this claim throughout the trial. A review of the entire record reveals only one time that defense counsel discussed the effect of the intoxication instruction on the case:
 
 
 29
 [T]he law is that because of intoxication, the loss of reasoning may be so great that you can't even find malice in a case such as this. And that's what the Judge instructed you on yesterday.
 
 
 30
 So the issue of intoxication is one that [the prosecutor], I believe, would just as soon try and forget, so he tries to confuse you. Remember, throughout, the burden is on the Prosecution to show any acts committed by this Defendant were not so impaired by alcohol that malice is not shown.
 
 
 31
 I won't say anything more about that, because I think a far greater and immediate question is whether they have shown that he did anything at all. But every time you place yourself in the jury room and try and determine exactly what this person did, including what has to be a sort of common sense problem he seemed to have with his identification and explanation of what happened in this case, remember that.
 
 
 32
 (Emphasis added). From this passage it is difficult to discern where the defense was going with the evidence of intoxication. Aside from this brief comment, however, the record is very clear: the evidence of intoxication was used by the defense only to explain Jacquez' erratic behavior during the hours following the killing.
 
 
 33
 In hindsight, involuntary manslaughter based upon voluntary intoxication may have been Jacquez' best theory. However, that theory was clearly inconsistent with Jacquez' contention that he did not commit the homicide, and it was not advanced as a defense. Under these circumstances, the trial judge was not required, either by state law or the Constitution, to give such an instruction sua sponte.
 
 
 34
 One of Jacquez' contentions, which was not addressed by the district court, is that his trial counsel was incompetent in failing to request an instruction on involuntary manslaughter. This contention defies the reality of advocacy in a trial setting. Counsel can hardly be faulted for not arguing or requesting instructions on a theory totally unrelated to the defendant's own version of the facts. Counsel would be in an intolerable position of arguing to the jury that "my client didn't do the killing, but if he did, he was too drunk to form an intent."
 
 
 35
 Returning to the only instructional error in the case, the voluntary manslaughter/diminished capacity instruction, it is clear from the totality of the record that it did not amount to constitutional error. It does not even come close. In light of the strong evidence of Jacquez' guilt, the fact that an involuntary manslaughter instruction was never requested, and the fact that intoxication was not relied upon as the defense's theory of the case, Jacquez actually reaped a benefit of sorts when the jury was allowed to consider the lesser offense of voluntary manslaughter. Without that instruction, the jury's only other choice would have been a murder conviction or acquittal. Under these circumstances, Jacquez has not demonstrated actual prejudice, and we must reverse the decision of the district court.
 
 
 36
 REVERSED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The magistrate judge recommended denying the petition on all grounds